UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK

-------------------------------------------------------------- x

TYRONE HOLMES,                              :

                Plaintiff,                :      Case No. 17-cv-4557 (ER) (KNF)

            - against -                         :

APPLE, INC., AMAZON.COM, LLC, and           :
CHECKPOINT FLUIDIC SYSTEMS
INTERNATIONAL, LTD.,                         :

              Defendants.               :

-------------------------------------------------------------- x

# MEMORANDUM OF LAW
## IN SUPPORT OF DEFENDANT AMAZON.COM, LLC'S
## MOTION FOR ENTRY OF JUDGMENT
## <u>AND TO DISMISS THE COMPLAINT</u>

Michael J. Goettig
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21tst Floor
New York, New York 10020
(212) 489-8230

## **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................... 1

BACKGROUND ........................................................................................................ 2

    A.    Allegations in the Complaint .............................................................. 2

    B.    The Parties' Agreement ...................................................................... 4

    C.    The Offer of Judgment and Deposit of Funds ................................... 6

    D.    Additional Facts ................................................................................. 7

        1.    The CheckPoint Laptop and the New Laptop .................... 7

        2.    The NYPD's Recovery of the CheckPoint Laptop from Ms. Scott ................................................................................. 8

ARGUMENT .......................................................................................................... 10

    A.    The Offer of Judgment Provides Plaintiff with Complete Relief Under the Contract ........................................................................... 10

        1.    At Most, Plaintiff is Entitled to a Refund of the Purchase Price. .... 11

        2.    The Court Should Enter Judgment Pursuant to the Terms of the Offer ............................................................................ 14

    B.    The Remaining Causes of Action Fail to State Claims Upon Which Relief May Be Granted ................................................................... 16

        1.    The Second and Third Causes of Action Must Be Dismissed ......... 17

        2.    The Fourth and Fifth Causes of Action Must Be Dismissed. .......... 19

        3.    The Sixth, Seventh and Eighth Causes of Action Sounding in Fraud Must Be Dismissed ................................................. 21

    C.    Evidence Before the Court Compels Dismissal ................................ 22

CONCLUSION ....................................................................................................... 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed.2d 868 (2009)........................................................17

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed.2d 202 (1986)........................................................23

*Architectural Aluminum Corp. v. Macarr, Inc.*,
  70 Misc. 2d 495 (Sup. Ct. N.Y. Cty. 1972) ............................................................................19

*Bank v. Caribbean Cruise Line, Inc.*,
  606 F. App'x 30 (2d Cir. 2015) ...............................................................................................15

*Bingham v. Blair LLC*,
  No. 10-5005, 2010 WL 1608881 (W.D. Wash. Apr. 19, 2010) ..............................................20

*Cabala v. Crowley*,
  736 F.3d 226 (2d Cir. 2013).....................................................................................................15

*Campbell-Ewald Co. v. Gomez*,
  136 S.Ct. 663 (2016)...........................................................................................................1, 16

*Chambers v. Time Warner, Inc.*,
  282 F.3d 147 (2d Cir. 2002).....................................................................................................17

*Clark-Fitzpatrick v. Long Isand R.R.*,
  70 N.Y.2d 382 (N.Y. 1987) .....................................................................................................20

*Contemporary Mission, Inc. v. U.S. Postal Serv.*,
  648 F.2d 97 (2d Cir. 1981).......................................................................................................23

*Corwin v. NYC Bike Share, LLC*,
  238 F. Supp. 3d 475 (S.D.N.Y. 2017) ), *vacated in part*, 2017 WL 4075213
  (S.D.N.Y. Mar. 13, 2017) ........................................................................................................12

*Ekin v. Amazon Servs., LLC*,
  84 F. Supp. 3d 1172 (W.D. Wash. 2014)................................................................................12

*Filanto, SpA v. Chilewich Intern. Corp.*,
  789 F. Supp. 1229 (S.D.N.Y. 1992)........................................................................................11

*Fincher v. County of Westchester*,
  979 F. Supp. 989 (S.D.N.Y. 1997) ..........................................................................................24

*Franco v. Allied Interstate LLC*,
    No. 13-CV-4053 2015 WL 7758534 (S.D.N.Y. Nov. 30, 2015)............................................16

*Geismann v. ZocDoc, Inc.*,
    268 F. Supp. 3d 599 (S.D.N.Y. 2017)..........................................................................15

*Global Network Commc'ns v. City of N.Y.*,
    458 F.3d 150 (2d Cir. 2006)..........................................................................................11

*Hayden v. Paterson*,
    594 F.3d 150 (2d Cir. 2010)...................................................................................16, 17

*Hepler v. Abercrombie & Fitch Co.*,
    607 F. App'x 91 (2d Cir. 2015) ..........................................................................1, 2, 15

*In re Bristol-Myers Squibb Sec. Litig.*,
    312 F. Supp. 2d 549 (S.D.N.Y. 2004).........................................................................11

*Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*,
    62 F.3d 69 (2d Cir. 1995)...........................................................................................17

*LeRoux, Inc. v. Burns*,
    4 Wash. App. 165 (Wash. Ct. App. 1971) .................................................................13

*Leyse v. Lifetime Entm't Servs.*,
    171 F. Supp. 3d 153 (S.D.N.Y. 2016), *aff'd*, 679 F. App'x 44 (2d Cir. 2017).................14, 16

*M.A. Mortenson Co. v. Timberline Software Corp.*,
    140 Wash. 2d 564 (Sup. Ct. Wash. 2000).................................................................19

*Maximo v. 140 Green Laundromat*,
    No. 14 Civ. 6948, 2015 WL 4095248 (S.D.N.Y. July 7, 2015) .............................16

*McInnis & Co. v. W. Tractor Equip.Co.*,
    63 Wash. 2d 652 (Sup. Ct. Wash. 1964)...................................................................19

*McNally Wellman Co. v. N.Y.S. Elec. & Gas Corp.*,
    63 F. 3d 1188 (2d Cir. 1995).......................................................................................13

*Meyer v. Uber Techs., Inc.*,
    868 F.3d 66 (2d Cir. 2017)..........................................................................................12

*Peters v. Amazon Servs., LLC*,
    2 F. Supp. 3d 1165 (W.D. Wash. 2013), *aff'd*, 669 F. App'x 487 (9th Cir. 2016) ..........................................................................................................12

*Rapoport v. Asia Elecs. Holding Co.*,
    88 F. Supp. 2d 179 (S.D.N.Y. 2000).........................................................................11

*RLS Assocs., LLC v. United Bank of Kuwait PLC,*
    464 F. Supp. 2d 206 (S.D.N.Y. 2006)........................................................14

*Robinson v. Reed-Prentice,*
    49 N.Y. 2d 471 (N.Y 1980) ...................................................................21

*Roth v. Jennings,*
    489 F. 3d 499 (2d Cir. 2007)...........................................................21-22

*Seneca Beverage Corp. v. Healthnow N.Y., Inc.,*
    200 F. App'x 25 (2d Cir. 2006) ............................................................23

*Tanasi v. New Alliance Bank,*
    786 F.3d 195 (2d Cir. 2015)...........................................................14, 15

*Tennenbaum Capital Partners LLC v. Kennedy,*
    No. 07 Civ. 9695, 2009 WL 2913679 (S.D.N.Y. Sept. 11, 2009), *aff'd*, 372 F.
    App'x 180 (2d Cir. 2010)...................................................................25

**Statutes**

N.Y. U.C.C. § 2-316(3)(a) .......................................................................18

N.Y. U.C.C. § 2-719(1)............................................................................13

Wash. Rev. Code § 7.72.010(4) ..........................................................19, 20

Wash. Rev. Code § 62A.2-101, *et seq.* .................................................13

Wash. Rev. Code § 62A.2-719(1)............................................................13

Wash. Rev. Code § 62A.2-316(3)(a) ......................................................18

**Other Authorities**

Fed. R. Civ. P. 9(b) ..............................................................................21

Fed. R. Civ. P. 12(c) ...........................................................................2, 17

Fed. R. Civ. P. 12(b)(6).....................................................................16, 21-22

Fed. R. Civ. P. 56(a) .............................................................................23

Fed. R. Evid. 801(d)(2)(A) ....................................................................24

Defendant Amazon.com, LLC ("Amazon") respectfully submits this memorandum of law in support of its motion for entry of judgment against Amazon and in favor of plaintiff Tyrone Holmes ("Mr. Holmes" or "Plaintiff") in the amount of $2,351.12 and, upon entry of said judgment, dismissal of all claims in the Complaint asserted against Amazon as either moot or failing to state a claim upon which relief may be granted.  In the alternative, Amazon seeks entry of summary judgment in its favor on all claims asserted by Plaintiff as to Amazon.

## PRELIMINARY STATEMENT

This lawsuit concerns a laptop computer that the New York Police Department recovered from Plaintiff's estranged wife.  According to the allegations in the Complaint, that computer was delivered to Plaintiff by Amazon.  While Amazon disputes the provenance of the laptop that was recovered from Plaintiff's estranged wife, it has offered to reimburse Plaintiff the full price of the transaction in question.  Plaintiff has refused to "take 'yes' for an answer," thereby prompting this motion.  *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 683 (2016).

Amazon has served and Plaintiff has refused an offer of judgment in the amount of $2,351.12 under Federal Rule of Civil Procedure 68 ("Rule 68").  As a matter of law, this amount – which is equal to the purchase price of the computer and service plan at issue in this dispute – is the most that Plaintiff could recover in this lawsuit on his First Cause of Action sounding in breach of contract if he prevailed at trial.  Under established Second Circuit precedent, when an offer of judgment under Rule 68 provides for the complete relief to which a plaintiff is entitled in a lawsuit, the appropriate course of action is for the district court to enter judgment consistent with that offer, "with or without the plaintiff's consent." *Hepler v. Abercrombie & Fitch Co.*, 607 F. App'x 91, 92 (2d Cir. 2015) (summary order).[1]  Thereafter, as

---

[1] Summary orders, unpublished decisions and docket entries cited herein are attached as exhibits to the accompanying Declaration of Michael Goettig ("Goettig Decl.").

1

Plaintiff will have attained the full recovery to which he could be entitled, there is no longer a live case or controversy between the parties. *See id.*

Plaintiff's various attempts to assert alternative causes of action sounding in breach of express and implied warranty (Second and Third Causes of Action), negligence, strict liability (Fourth and Fifth Causes of Action), and fraud and false advertising (Sixth through Eighth Causes of Action) either are contradicted by the agreement between the parties or fail to state a claim upon which relief may be granted and should be dismissed pursuant to Rule 12(c).

Out of an abundance of caution, Amazon further submits on this motion that no reasonable jury could find in Plaintiff's favor, and accordingly, in the event that any of Plaintiff's various causes of action withstand Amazon's motion for judgment pursuant to Rule 68 or on the pleadings, the Court should enter summary judgment in Amazon's favor under Rule 56 of the Federal Rules of Civil procedure.

## BACKGROUND

### A.     Allegations in the Complaint

On or about June 22, 2016, Plaintiff purchased through Amazon's online services a new Macbook Pro laptop (the "New Laptop"). (Docket Doc. No. 1 ("Compl.") ¶ 21.) Documentation submitted with the Complaint does not indicate the serial number of the New Laptop. (Compl., Exhibit A.) The New Laptop was delivered to Plaintiff's residence on June 23, 2016. (Compl. ¶ 33.)

The Complaint further alleges that on or around September 9, 2016, Detective Rodrigo Caballero of the New York City Police Department Central Investigations Division ("Detective Caballero") contacted Plaintiff in an attempt to recover a Macbook Pro laptop (the "CheckPoint Laptop") that was the property of defendant CheckPoint Fluidic Systems International, Ltd. ("CheckPoint"). (Compl. ¶¶ 34-36.) CheckPoint was able to locate the CheckPoint Laptop

2

through the use of software that it had installed on the device.  (Compl. ¶¶ 44, 76.)  According to

the Complaint, on or around September 10, 2016, "Plaintiff informed Detective Caballero that he

was not in possession of the computer because he had given it to his estranged wife, whose

whereabouts were unknown to him."  (Compl. ¶ 38.)

The Complaint alleges that from September 12, 2016, to September 21, 2016, "Plaintiff

*attempted to* communicate with his estranged wife via phone and e-mail to facilitate the return of

the computer" (Compl. ¶ 49, emphasis added), but nothing in the Complaint suggests that those

attempts were successful.  On September 22, 2016, Plaintiff told Detective Caballero that he

would "attempt to make further efforts to locate his estranged wife and persuade her to return the

device," and hired a private investigator that same day to locate her.  (Compl. ¶¶ 53-54.)  On

September 27, 2016, Plaintiff's counsel explained to Detective Caballero that Plaintiff "was

attempting to negotiate the return of the subject device by transporting his wife's sister up from

Atlantic City, NJ to visit his wife on October 1, 2016 and persuade her to return the computer."

(Compl. ¶ 56.)

The Complaint alleges "upon information and belief" that "on or about October 2, 2016,

Plaintiff's wife's sister informed Plaintiff's counsel that after meeting with [P]laintiff's wife,

Plaintiff's wife's sister confirmed that the subject device was in a storage unit controlled by

Plaintiff's wife, but that she … refused to cooperate in the item's return."  (Compl. ¶ 58.)

The Complaint further alleges "upon information and belief" that on October 3, 2016, the

CheckPoint Laptop was ultimately recovered from a storage facility located at 626 West 28th

Street, in New York.  (Compl. ¶ 62.)  According to the Complaint, Plaintiff was not present

during that recovery.  There is nothing in the Complaint to indicate that Plaintiff ever discussed

with his estranged wife how the CheckPoint Laptop came to be in her possession – or that

Plaintiff ever saw the laptop that was recovered from the storage facility. On the contrary, the Complaint identifies only four people who were present at the storage facility when the CheckPoint Laptop was recovered: Plaintiff's estranged wife, Plaintiff's attorney, Detective Caballero, and Detective Caballero's partner. (*Id.*)

The Complaint alleges that this experience caused Plaintiff to miss "critical employment opportunities" and rendered him "unable to fulfill many contractual obligations and responsibilities." (Compl. ¶ 66.) On these grounds, the Complaint purports to assert eight causes of action against Amazon: breach of contract (First Cause of Action), breach of express and implied warranty (Second and Third Causes of Action), negligence (Fourth Cause of Action), strict liability (Fifth Cause of Action), fraudulent concealment (Sixth Cause of Action), fraud in the inducement and misrepresentation (Seventh Cause of Action) and false advertising and unfair business practices (Eighth Cause of Action).

**B.    The Parties' Agreement**

Plaintiff created an Amazon account on January 26, 2010. (Declaration of Jesse Jensen ("Jensen Decl."), ¶ 2.) When he did so, he accepted the Conditions of Use (the "COUs") on Amazon's account registration page. *Id.*, Exhibit A. Plaintiff also agreed to the COUs each time he purchased an item from Amazon, including on June 22, 2016, when he purchased the New Laptop. *Id.*, ¶ 5. Amazon's COUs have contained, among other things, a limitation of liability and waiver of express and implied warranties since before January 2010. *Id.*, ¶ 3, Exhibits B-C.

Plaintiff purchased the New Laptop by placing it in Amazon's online Shopping Cart and proceeding through Amazon's standard checkout page. *Id.*, ¶ 5, Exhibit D. In order to "check out" and complete his purchase of the New Laptop, Plaintiff clicked on a "Place your order" button accompanied by text explaining that "By placing your order, you agree to Amazon.com's privacy notice and conditions of use." *Id.*, at ¶¶ 5-6, Exhibit E. The blue text denotes hyperlinks

4

to the full contract terms.  Plaintiff could not have placed the order for the New Laptop through

Amazon's standard checkout page without affirmatively clicking on this button.  Plaintiff could

have canceled his purchase if he did not wish to accept the COUs or the limitation of liability and

waiver of warranties contained therein, but he elected not to.  *Id.*

When Plaintiff purchased the New Laptop, he expressly agreed and acknowledged that

"Amazon does not warrant that product descriptions or other content of any Amazon Service is

accurate, complete, reliable, current, or error-free." *Id.* Exhibit B, at "Product Descriptions." He

also agreed that "If a product offered by Amazon itself is not as described, [Plaintiff's] sole

remedy is to return it in unused condition." *Id.*  However, "[a]t Amazon's discretion, a refund

may be issued without requiring a return." *Id.*, at "Returns, Refunds and Title."

By using Amazon's online services to purchase the New Laptop, Plaintiff also agreed to

Amazon's express disclaimer of warranties and limitation of liability in the COUs, which read in

relevant part as follows:

> THE AMAZON SERVICES AND ALL INFORMATION,
> CONTENT, MATERIALS, PRODUCTS (INCLUDING
> SOFTWARE) AND OTHER SERVICES INCLUDED ON OR
> OTHERWISE MADE AVAILABLE TO YOU THROUGH THE
> AMAZON SERVICES ARE PROVIDED BY AMAZON ON AN
> "AS IS" AND "AS AVAILABLE" BASIS, UNLESS
> OTHERWISE SPECIFIED IN WRITING. AMAZON MAKES
> NO REPRESENTATIONS OR WARRANTIES OF ANY KIND,
> EXPRESS OR IMPLIED, AS TO THE OPERATION OF THE
> AMAZON SERVICES, OR THE INFORMATION, CONTENT,
> MATERIALS, PRODUCTS (INCLUDING SOFTWARE) OR
> OTHER SERVICES INCLUDED ON OR OTHERWISE MADE
> AVAILABLE TO YOU THROUGH THE AMAZON SERVICES,
> UNLESS OTHERWISE SPECIFIED IN WRITING. YOU
> EXPRESSLY AGREE THAT YOUR USE OF THE AMAZON
> SERVICES IS AT YOUR SOLE RISK.
>
> TO THE FULL EXTENT PERMISSIBLE BY APPLICABLE
> LAW, AMAZON DISCLAIMS ALL WARRANTIES, EXPRESS
> OR IMPLIED, INCLUDING, BUT NOT LIMITED TO,
> IMPLIED WARRANTIES OF MERCHANTABILITY AND

FITNESS FOR A PARTICULAR PURPOSE. AMAZON DOES
NOT WARRANT THAT THE AMAZON SERVICES,
INFORMATION, CONTENT, MATERIALS, PRODUCTS
(INCLUDING SOFTWARE) OR OTHER SERVICES
INCLUDED ON OR OTHERWISE MADE AVAILABLE TO
YOU THROUGH THE AMAZON SERVICES, AMAZON'S
SERVERS OR ELECTRONIC COMMUNICATIONS SENT
FROM AMAZON ARE FREE OF VIRUSES OR OTHER
HARMFUL COMPONENTS. AMAZON WILL NOT BE
LIABLE FOR ANY DAMAGES OF ANY KIND ARISING
FROM THE USE OF ANY AMAZON SERVICE, OR FROM
ANY INFORMATION, CONTENT, MATERIALS, PRODUCTS
(INCLUDING SOFTWARE) OR OTHER SERVICES
INCLUDED ON OR OTHERWISE MADE AVAILABLE TO
YOU THROUGH ANY AMAZON SERVICE, INCLUDING,
BUT NOT LIMITED TO DIRECT, INDIRECT, INCIDENTAL,
PUNITIVE, AND CONSEQUENTIAL DAMAGES, UNLESS
OTHERWISE SPECIFIED IN WRITING.

Jensen Decl., Exhibit B (capital letters in original).

## C.     The Offer of Judgment and Deposit of Funds

On December 29, 2017, Amazon tendered to Plaintiff an offer of judgment pursuant to

Rule 68 in the full amount of the price of the items he purchased through Amazon on June 22,

2016 (the "Offer of Judgment"). *See* Goettig Decl., Exhibit A (offer of judgment and

accompanying cover letter). Later that day, Plaintiff notified Amazon that its offer was "hear-by

[*sic*] rejected." *Id.*, Exhibit B.

On Friday, January 12, 2018, the Court entered an Order granting Amazon leave to

deposit with the Clerk of the United States District Court for the Southern District of New York

(the "Clerk") funds in the amount of $2,351.12 (Docket Doc. No. 83). This is the amount that

Plaintiff paid for the New Laptop and accompanying Apple Care service plan. (Compl., Exhibit

A.) On January 16, 2018, Amazon deposited funds in that amount with the Clerk. (Goettig

Decl., Exhibit C.)

**D.    Additional Facts**[2]

**1.    The CheckPoint Laptop and the New Laptop**

CheckPoint purchased the CheckPoint Laptop from Amazon on June 2, 2016.  (Affidavit of Ruston Mahoney[3] ("Mahoney Affidavit"), page 1 of 5, Exhibit A.)  The CheckPoint Laptop was among a batch of new Mackbook Pro computers that Amazon sourced directly from the manufacturer, Apple.  (Jensen Decl., ¶ 10.)  The CheckPoint Laptop was packaged for delivery from Amazon's fulfillment center in Breinigsville, Pennsylvania and delivered to CheckPoint on or around June 7, 2016.  (Jensen Decl., ¶ 11, Mahoney Affidavit, Exhibit A.)  Upon receipt, CheckPoint's Information Technology Officer Ruston Mahoney ("Mr. Mahoney") designated the name of the CheckPoint Laptop as "Ewens-MBP.home," attached a sticker with a bar code indicating that it was the "Property of CheckPoint Pumps" to the bottom of the CheckPoint Laptop, and installed, among other things, "Kaseya" tracking software on the CheckPoint Laptop.  (Mahoney Affidavit, page 2 of 5, Exhibit B.)  CheckPoint then tendered the CheckPoint Laptop to FedEx for delivery to Dubai, UAE.  (*Id.*, page 2 of 5, Exhibit C.)  The device subsequently became lost in transit.  Mr. Mahoney filed a report reflecting that fact with FedEx on June 15, 2016.  (*Id.*, page 3 of 5.)

On June 22, 2016, Plaintiff purchased the New Laptop from Amazon.  (Compl. ¶ 21.)  The New Laptop was among a batch of new Macbook Pro computers that Amazon sourced directly from the manufacturer, co-defendant Apple.  (Jensen Decl., ¶ 7.)  The New Laptop was

---

[2] The arguments set forth in Sections A and B of the "Argument" portion below do not rely on any of these additional facts, and the Court may enter judgment without considering them.  They are submitted only in the event that the Court deems it necessary to consider the arguments set forth in Section C of the "Argument."

[3] CheckPoint submitted the Mahoney Affidavit in connection with its motion to dismiss on the grounds of personal jurisdiction.  For the Court's ease of reference, a copy of the Mahoney Affidavit and exhibits relevant to this motion are filed simultaneously herewith.

packaged for delivery to Plaintiff from its fulfillment center in Lewisberry, Pennsylvania.  (*Id.*,
¶ 8.)  The New Laptop was delivered via UPS to Plaintiff at 9:35 AM on June 23, 2016.  Plaintiff
provided his signature as acknowledgment of delivery of the New Laptop at that time.  (*Id.*, ¶ 9,
Exhibit F.)  When Plaintiff received it, the New Laptop was shrink-wrapped and in new
condition.  (Transcript of September 14, 2017 Court Conference ("9.14.17 Tr."), at 3:19-3:22
(Goettig Decl., Exhibit D).)  Plaintiff also confirmed that "The computer [Plaintiff] had did not
have a sticker on it.... There was no sticker on the bottom of the computer [Plaintiff] had from
Apple."  (Transcript of January 12, 2018 Court Conference ("1.12.18 Tr."), at 5:13, 17-18
(Goettig Decl. Exhibit E); see also 9.14.17 Tr., at 8-9.)

　　　Shortly after receiving the New Laptop, Plaintiff gave it to his estranged wife, Ms.
Stephanie Scott.  (9.14.17 Tr., at 5:9-16 ("I gave [the New Laptop] to my estranged wife....
That's the reason I bought it.").)

　　　At 6:30 PM on June 23, 2016, Mr. Mahoney learned through the Kaseya software that
Ms. Scott had created a user profile in her own name on the CheckPoint Laptop and was, at that
moment, using the device.  (Mahoney Affidavit, page 3 of 5, Exhibit E.)  He subsequently
provided additional information about Ms. Scott and the location of the CheckPoint Laptop
obtained from the Kaseya software to Mr. Kenneth Meyer, a loss prevention specialist with
FedEx.  (Mahoney Affidavit, page 4 of 5, Exhibit F.)  Mr. Meyer, in turn, filed a police report
with the Kenner, Louisiana, police department on August 2, 2016.  The police report identified
Ms. Scott as "the person in possession of the computer."  *Id.*

### 2.    The NYPD's Recovery of the CheckPoint Laptop from Ms. Scott

　　　On or around August 16, 2016, the Kenner, Louisiana, Police Department contacted the
New York Police Department for its assistance in recovering the CheckPoint Laptop.  (Mahoney
Affidavit, page 4 of 5.)  Shortly thereafter, on or around September 8, 2016, Detective Caballero

visited Plaintiff's residence in an attempt to recover the CheckPoint Laptop.  (Compl., ¶¶ 34-35.)
On or around September 10, 2016, "Plaintiff informed Detective Caballero that he was not in
possession of the computer because he had given it to his estranged wife, whose whereabouts
were unknown to him."  (Compl. ¶ 38.)

Three days later, on September 13, 2016, Plaintiff's counsel sent a letter to CheckPoint
stating – erroneously – that Plaintiff had purchased the CheckPoint Laptop from the Apple Store
located at 1981 Broadway on the Upper West Side of Manhattan.  (Affidavit of Andrew C.
Elliott[4] ("Elliott Affidavit"), page 3, Exhibit C.)  In support of this claim, Plaintiff's counsel
submitted a cashier's receipt reflecting the purchase of a Macbook from the Apple Store on the
Upper West Side on June 5, 2016.  *Id.*  The CheckPoint Laptop is a 15-inch Macbook Pro, but
the computer that Plaintiff purchased on June 5, 2016 was a 13-inch Macbook Air.  (*Id.*; *see also*
Exhibit B.)  By Plaintiff's own estimate, he has owned more than 234 Macintosh computers.
(Docket #82, Goettig Decl., Exhibit F.)

It appears from the allegations in the Complaint and Plaintiff's various submissions to the
Court that as of September 9 he was no longer in direct communications with his wife, Ms. Scott,
the person to whom he had given the New Laptop and who was in possession of the CheckPoint
Laptop.  Rather, it appears that the only individuals who communicated with Ms. Scott directly
concerning the CheckPoint Laptop were Ms. Scott's sister (Compl. ¶¶ 58-59), Plaintiff's counsel,
and members of the NYPD (*Id.*, at ¶¶ 61-62).  As noted above, Plaintiff was *not* at the storage
facility at the time the CheckPoint Laptop was recovered on October 3, 2016, and he did not
have an opportunity to inspect the CheckPoint Laptop before it was returned to CheckPoint.

---

[4] CheckPoint submitted the Elliott Affidavit in connection with its motion to set aside its default
(Docket #38).  For the Court's ease of reference, a copy of the Elliott Affidavit, with exhibits
referenced herein, are filed simultaneously herewith.

9

(1.12.18 Tr., at 5:21-25 (Court: "I thought that the computer that was seized, if you will, by the NYPD at the warehouse facility did have a sticker on it."  Plaintiff: "I don't know.  I wasn't there.  I wasn't there.").)

The CheckPoint Laptop was returned to CheckPoint on October 17, 2016.  Mr. Mahony conducted a visual inspection of the CheckPoint Laptop upon its return and confirmed that the sticker indicating that it was "Property of CheckPoint Pumps" was still affixed to the bottom of the device.  (Mahony Aff., p. 4 of 5, Exhibits G-H.)

Plaintiff has recently acknowledged that he may have once again been mistaken about the provenance of the CheckPoint Laptop, and that it is possible that the CheckPoint Laptop was *not* the New Laptop that was delivered to his home on June 23, 2016.  In his January 5, 2018, correspondence to the Court, Plaintiff stated, "At this time, there could be two Apple computers involved – one that I bought and one that CheckPoint bought."  (Docket #81, Goettig Decl., Exhibit G.)  Amazon respectfully submits that these facts conclusively demonstrate that Plaintiff is mistaken in his conclusion that he purchased the CheckPoint Laptop from Amazon.

## ARGUMENT

**A.    The Offer of Judgment Provides Plaintiff with Complete Relief Under the Contract**

Plaintiff's case is premised upon the mistaken presumption that the New Laptop and the CheckPoint Laptop are one and the same.  Nevertheless, rather than incur the expense and inconvenience attendant to disproving that presumption through discovery, Amazon has offered to Plaintiff the full amount available to him under the terms of the very contract that Plaintiff claims was breached by Amazon in the First Cause of Action.  This Offer of Judgment of $2,351.12 provides the full amount of relief to which Plaintiff may be entitled on this claim.

1.    **At Most, Plaintiff is Entitled to a Refund of the Purchase Price.**

Amazon disputes that Plaintiff is entitled to *any* relief because 1) under the COUs,

Plaintiff was required to return the New Laptop in order to receive a refund, which he has failed

to do; and 2) the CheckPoint Laptop which was recovered by Detective Caballero is not the New

Laptop that was delivered to Plaintiff's home.  Be that as it may, and affording Plaintiff all

reasonable inferences on this motion, it remains the case that under the agreement between the

parties, the most that Plaintiff may recover in this action is the purchase price of the property in

question.

On this motion, "[t]he court need not accept as true an allegation that is contradicted by

documents on which the complaint relies." *In re Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp.

2d 549, 555 (S.D.N.Y.2004); *see also Rapoport v. Asia Elecs. Holding Co.*, 88 F. Supp. 2d 179,

184 (S.D.N.Y. 2000) ("if these documents contradict the allegations of the … complaint, the

documents control").  This ensures that Plaintiff may not avoid entry of judgment on his various

claims through artful pleading.

> In most instances where this exception [to the rule that a reviewing
> court is limited to the pleadings on a motion to dismiss] is
> recognized, the incorporated material is a contract or other legal
> document containing obligations upon which the plaintiff's
> complaint stands or falls, but which for some reason — usually
> because the document, read in its entirety, would undermine the
> legitimacy of the plaintiff's claim — was not attached to the
> complaint.

*Global Network Commc'ns v. City of N.Y.*, 458 F.3d 150, 157 (2d Cir. 2006).  In other words,

Plaintiff "cannot have it both ways… [he] cannot [rely] on the contract, when it works to [his]

advantage, and repudiate it when it works to [his] disadvantage." *Filanto, SpA v. Chilewich

Intern. Corp.*, 789 F. Supp. 1229, 1240 (S.D.N.Y. 1992), quoting *Tepper Realty Co., v. Mosaic

Tile Co.*, 259 F. Supp. 688, 692 (S.D.N.Y. 1966).

When Plaintiff created an Amazon customer account in January 2010, he accepted the COUs on Amazon's account registration page. On June 22, 2016, when Plaintiff purchased the New Laptop, he once again accepted the COUs on Amazon's checkout page. Plaintiff could not have created his account or purchased that item through Amazon's standard checkout page without having done so. In light of the fact that Plaintiff has asserted a claim that Amazon breached the contract that was formed by Plaintiff's unequivocal acceptance of Amazon's COUs, the Court should not entertain any argument by Plaintiff that he was somehow unaware of those terms, or that they are unenforceable as applied to this dispute.

Under Washington law,[5] contracts formed in Internet transactions, in which parties must click a button indicating they agree to the contract terms, are enforceable like any other contract. *Ekin v. Amazon Servs., LLC*, 84 F. Supp. 3d 1172, 1175 n.5 (W.D. Wash. 2014) (recognizing the validity of Amazon's clickwrap agreement); *Peters v. Amazon Servs., LLC*, 2 F. Supp. 3d 1165, 1170 (W.D. Wash. 2013) *aff'd,*669 F. App'x 487 (9th Cir. 2016) (applying Washington law, enforcing Amazon clickwrap for sellers). Courts in this Circuit are in accord. *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 77 (2d Cir. 2017) (the terms of a clickwrap agreement are binding on the user where notice of the terms is reasonably conspicuous and the user's manifestation of assent to those terms is clear and unambiguous); *Corwin v. NYC Bike Share, LLC*, 238 F. Supp. 3d 475, 487, *et seq.* (S.D.N.Y. 2017), *vacated in parts not relevant here*, 2017 WL 4075213 (S.D.N.Y. Mar. 13, 2017) (enforcing terms of clickwrap agreement).

---

[5] In relevant part, the COUs contain a provision calling for the application of "applicable federal law, and the laws of the state of Washington" to "any dispute of any sort that might arise between [Plaintiff] and Amazon." Jensen Decl., Exhibit B, "Applicable Law." It is of no moment whether the Court applies New York law or Washington law to this controversy, as entry of judgment on the terms set forth herein is appropriate in either jurisdiction.

According to the Complaint, Amazon "contracted to provide Plaintiff, for valuable consideration, a suitable brand new Apple Macbook Pro MJLQ2LL/A 15-inch Laptop, free from defects, and to deliver said Laptop to the Plaintiff's residence." (Compl. ¶ 74.) This is not so. As the COUs make clear, "Amazon attempts to be as accurate as possible [in its product descriptions]. However, Amazon does not warrant that product descriptions or other content of any Amazon Service is accurate, complete, reliable, current, or error-free. If a product offered by Amazon itself is not as described, [Plaintiff's] sole remedy is to return it in unused condition," subject to Amazon's discretion to issue a refund even in the absence of return of the purchased product. Jensen Decl., Exhibit B. Furthermore, under the COUs, Plaintiff expressly agreed as follows:

> AMAZON WILL NOT BE LIABLE FOR DAMAGES OF ANY KIND ARISING FROM THE USE OF ANY AMAZON SERVICE, OR FROM ANY INFORMATION, CONTENT, MATERIALS, PRODUCTS (INCLUDING SOFTWARE) OR OTHER SERVICES INCLUDED ON OR OTHERWISE MADE AVAILABLE TO YOU THROUGH ANY AMAZON SERVICE, INCLUDING, BUT NOT LIMITED TO DIRECT, INDIRECT, INCIDENTAL, PUNITIVE, AND CONSEQUENTIAL DAMAGES, UNLESS OTHERWISE SPECIFIED IN WRITING.

*Id.*

"It is axiomatic that parties to a contract must remain free to allocate risks and shield themselves from liability." *McNally Wellman Co. v. N.Y.S. Elec. & Gas Corp.*, 63 F.3d 1188, 1195 (2d Cir. 1995) (citing N.Y. U.C.C. § 2-719 cmt. 1 (McKinney 1993), which reads in relevant part, "Under this section parties are left free to shape their remedies to their particular requirements and reasonable agreements limiting or modifying remedies are to be given effect)." Like New York, the state of Washington has incorporated the terms of the Uniform Commercial Code into its statutory law, and has interpreted UCC Section 2-719 in a manner consistent with courts sitting in New York. *See* Wash. Rev. Code § 62A.2-101, *et seq.*; *LeRoux, Inc. v. Burns*, 4

13

Wash. App. 165, 169 (Wash. Ct. App. 1971) ("As we read it, the Uniform Commercial Code

leaves the parties free to shape their remedies according to their particular needs, within certain

limits").  That is precisely what Plaintiff and Amazon have done: they have agreed that

"[Plaintiff's] sole remedy is to return it in unused condition," a form of limited relief which is

expressly contemplated by relevant law.  *See* Wash. Rev. Code § 62A.2-719(1)(a); N.Y. U.C.C.

2-719(1)(a) (parties may enter into an agreement "limiting the buyer's remedies to return of the

goods and repayment of the price") and (b) (if a contractual remedy is "expressly agreed to be

exclusive," it is the "sole remedy" available to the buyer).  Accordingly, even assuming for the

sake of this motion that the New Laptop had CheckPoint's software on it (notwithstanding

Plaintiff's own subsequent representations to the Court that the New Laptop was delivered to

him shrink wrapped, in new condition, and without a sticker identifying it as the CheckPoint

Laptop), Plaintiff's sole recourse under the parties' agreement was to return it for a refund – a

refund which Amazon has already made available to him through its offer of confession of

judgment.

## 2.        The Court Should Enter Judgment Pursuant to the Terms of the Offer.

"A case becomes moot pursuant to Article III's Case or Controversy Clause when it is

impossible for a court to grant any effectual relief whatever to the prevailing party." *Tanasi v.*

*New Alliance Bank*, 786 F.3d 195, 199 (2d Cir. 2015) (quoting *Knox v. Serv. Emps. Int'l Union,*

*Local 1000*, 132 S. Ct. 2277, 2287 (2012)) (brackets and quotation marks omitted).  Although a

mere unaccepted Rule 68 offer of judgment—even one that purports to offer complete relief—

does not moot a case on its own, the Second Circuit[6] has held that such an offer, combined with

---

[6] Applicable federal law, rather than Washington State law, applies to procedural matters before
the Court. *RLS Assocs., LLC v. United Bank of Kuwait PLC*, 464 F.Supp.2d 206, 212 (S.D.N.Y.
2006) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938)).

entry of judgment for complete relief against a defendant, *does* moot a plaintiff's claim.  *See Leyse v. Lifetime Entm't Servs.*, 171 F. Supp. 3d 153, 156 (S.D.N.Y 2016), *aff'd* 679 F. App'x 44 (2d Cir. 2017) ("a defendant's deposit of a full settlement with the court, and consent to entry of judgment against it, will eliminate the live controversy before a court"); *Tanasi*, 786 F.3d at 200 ("*after* judgment is entered, the plaintiff's individual claims will become moot for purposes of Article III") (citing *ABN Amro Verzekeringen BV v. Geologistics Ams., Inc.,* 485 F.3d 85, 94 (2d Cir. 2007) ("Mootness, in the constitutional sense, occurs when the parties have no 'legally cognizable interest' or practical 'personal stake' in the dispute, and the court is therefore incapable of granting a judgment that will affect the legal rights as between the parties.")); *see also Hepler*, 607 F. App'x at 92 ("[T]he entry of judgment pursuant to th[e Rule 68] offer ... 'moots' the case.  Mootness, in the constitutional sense, would require dismissal for lack of subject matter jurisdiction.") (internal citation omitted); *Bank v. Caribbean Cruise Line, Inc.*, 606 F. App'x 30, 31 (2d Cir. 2015) (summary order affirming dismissal, holding that the plaintiff's "claims were mooted by the district court's entry of a judgment providing him with complete relief" after Rule 68 offer of judgment).

The Second Circuit has instructed that when an offer for judgment "tenders *complete* relief [to a plaintiff], the court should (absent additional procedural complications) enter judgment pursuant to the terms of that offer, *with or without the plaintiff's consent*." *Hepler*, 607 F. App'x at 92 (second emphasis added) (citation omitted).  *See Cabala v. Crowley*, 736 F.3d 226, 228 (2d Cir. 2013) (explaining that when a plaintiff does not accept an offer of judgment "for the full amount of damages owed," the "typically proper disposition ... is for the district court to enter judgment against the defendant for the proffered amount and to direct payment to the plaintiff consistent with the offer") (citing *McCauley v. Trans Union, LLC*, 402 F.3d 340, 342

(2d Cir. 2005)).  Courts in this district follow that directive.  *See, e.g., Leyse*, 171 F. Supp. 3d at

155 ("once the defendant has furnished full relief, there is no basis for the plaintiff to object to

the entry of judgment in its favor"); *Geismann v. ZocDoc, Inc.*, 268 F. Supp. 3d 599, 603-05

(S.D.N.Y.  2017) (holding that an unaccepted offer of judgment, in conjunction with the deposit

of funds payable to the plaintiff, extinguishes any case or controversy that may be before the

court under the Supreme Court's precedent in *Campbell-Ewald Co. v. Gomez*, ___ U.S. ___, 136

S. Ct. 663 (2016)); *Maximo v. 140 Green Laundromat*, No. 14 Civ. 6948, 2015 WL 4095248, at

*3 (S.D.N.Y. July 7, 2015) (granting motion to enter judgment where there could be no dispute

that offer of judgment provided complete relief).  Accordingly, because Plaintiff is entitled to no

more than a refund of the price he paid on the transaction in question pursuant to the terms of the

contract under which he purports to assert the First Cause of Action, the Court should enter

judgment in that amount.

      Because the Offer of Judgment here provides Plaintiff with all the relief that he is entitled

to recover on his claim sounding in breach of contract, entry of judgment consistent with that

offer eliminates any case or controversy between the parties on that claim.  It should thus be

dismissed as moot upon entry of judgment.*See, e.g., Leyse*, 171 F. Supp. 3d at 156; *Franco v.*

*Allied Interstate LLC*, No. 13 Civ. 4053, 2015 WL 7758534, at *3 (S.D.N.Y. Nov. 30, 2015);

*Maximo*, 2015 WL 4095248, at *4.

**B.**    **The Remaining Causes of Action Fail to State Claims Upon Which Relief May Be**
       **Granted**

      On a motion for judgment on the pleadings, a reviewing court "employs the same

standard applicable to dismissals pursuant to Fed. R. Civ. P. 12(b)(6)."  *Hayden v. Paterson*, 594

F.3d 150, 160 (2d Cir. 2010), *quoting Johnson v. Rowley*, 569 F.3d 40, 43 (2d Cir. 2009) (*per*

*curiam*).  "Thus, [the court] will accept all factual allegations in the complaint as true and draw

all reasonable inferences in [the plaintiff's] favor.  To survive a Rule 12(c) motion, [the plaintiff's] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Hayden*. 594 F.3d at 160 (quoting *Johnson*, 569 F.3d at 43-44 and *Ashcroft v. Iqbal*, 556 U.S. 662, 677, 129 S. Ct. 1937, 1949, 173 L. Ed.2d 868 (2009)).

In this respect, "the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (*per curiam*) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)).  Moreover, "when a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nonetheless consider that document on a motion pursuant to Rule 12(c), without converting the proceeding to one for summary judgment.  *Id.*  Here, the Complaint alleges, *inter alia*, that Amazon breached its contract with Plaintiff and the express warranty that it allegedly issued to him.  *See, e.g.,* Compl. ¶¶ 24, 27, 30, 74-75, 77-79, 81-86.  The Complaint also refers to certain representations that were made to Plaintiff, which Plaintiff alleges were false.  *See, e.g.,* Compl. ¶¶ 116-19.  Where, as here, the pleading is "replete with references to the contracts and requests judicial interpretation of their terms," a reviewing court may consider those terms without converting a motion for judgment on the pleadings into a motion for summary judgment pursuant to Rule 56. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 n.4 (2d Cir. 2002).

## 1.    The Second and Third Causes of Action Must Be Dismissed

The Second and Third Causes of Action purport to assert that Amazon breached the express and implied warranties that it issued to Plaintiff in connection with the sale of the New Laptop.  Because the COUs expressly disclaim both express and implied warranties, these two causes of action must be dismissed.

In support of the Second Cause of Action, the Complaint alleges that Amazon "warranted and represented [to] the Plaintiff" that the New Laptop was "brand-new, …. [was] free from any and all spy software capable of tracking Plaintiff's activities, and that [Amazon] had good and marketable title" to the New Laptop.  (Compl., ¶ 81.)  In support of the Third Cause of Action, the Complaint alleges that Amazon "impliedly warranted" that the New Laptop was "merchantable, *i.e.*, fit for the ordinary purposes for which such electronics, computers, and related products are generally used."  (Compl., ¶ 88.)  These allegations are directly contradicted by the COUs, wherein Amazon stated prominently in all capital letters that "ALL PRODUCTS (INCLUDING SOFTWARE) … ARE PROVIDED BY AMAZON ON AN 'AS IS' AND 'AS AVAILABLE' BASIS, UNLESS OTHERWISE SPECIFIED IN WRITING."  Amazon further disclaimed "WARRANTIES OF ANY KIND, EXPRESS OR IMPLIED, AS TO THE OPERATION OF THE … PRODUCTS (INCLUDING SOFTWARE)[.]"  For the elimination of ambiguity, Amazon repeated that it "DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE."  It further specifically stated that "AMAZON DOES NOT WARRANT THAT THE … PRODUCTS (INCLUDING SOFTWARE) … ARE FREE OF VIRUSES OR OTHER HARMFUL COMPONENTS."

The Disclaimer satisfies all required elements of a valid and binding disclaimer of express and implied warranties.  Under Section 2-316 of the U.C.C., "all implied warranties are excluded by expressions like 'as is,' 'with all faults' or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty."  Wash. Rev. Code § 62A.2-316(3)(a), N.Y. U.C.C. § 2-316(3)(a).

18

"The rule is well settled that no warranty, express or implied, will be found where, as here, the seller expressly refuses by merger and disclaimer clauses to give any warranties." *McInnis & Co. v. W. Tractor Equip. Co.*, 63 Wash. 2d 652, 656 (Sup. Ct. Wash. 1964).  In light of the fact that Plaintiff specifically referred to both express and implied warranties in the Complaint, he cannot disavow knowledge of COUs now; in other words, Plaintiff "cannot claim to have relied upon a specific warranty which contained an express disclaimer as to merchantability and fitness and at the same time deny that [he] was aware of its existence." *Architectural Aluminum Corp. v. Macarr, Inc.*, 70 Misc. 2d 495, 498 (Sup. Ct. N.Y. Cty. 1972).

Accordingly, the Second and Third Causes of Action must be dismissed.  *M.A. Mortenson Co. v. Timberline Software Corp.*, 140 Wash. 2d 568, 574-575 (Sup. Ct. Wash. 2000) (dismissing claims sounding in breach of express and implied warranties on the grounds that such warranties were disclaimed in the parties' agreement).

### 2.     The Fourth and Fifth Causes of Action Must Be Dismissed.

The Complaint purports to assert claims sounding in common-law negligence and strict products liability against Amazon.  Both of these causes of action must be dismissed as preempted by the Washington Product Liability Act.

As set forth above, under the COUs, the parties agreed that the laws of the state of Washington would apply to "any dispute of any sort that might arise between [Plaintiff] and Amazon."  Jensen Decl., Exhibit A.  The Washington Product Liability Act (the "WPLA") preempts precisely the sort of common-law remedies that Plaintiff purports to assert against Amazon here.  The WPLA defines a "product liability claim" as follows:

> any claim or action brought for harm caused by the manufacture, production, making, construction, fabrication, design, formula, preparation, assembly, installation, testing, warnings, instructions, marketing, packaging, storage or labeling of the relevant product. It includes, but is not limited to, any claim or action previously

> based on: Strict liability in tort; negligence; breach of express or
> implied warranty[7]; breach of, or failure to, discharge a duty to
> warn or instruct, whether negligent or innocent; misrepresentation,
> concealment, or nondisclosure, whether negligent or innocent; or
> other claim or action previously based on any other substantive
> legal theory except fraud, intentionally caused harm or a claim or
> action under the consumer protection act, chapter 19.86 RCW.

Wash. Rev. Code § 7.72.010(4).  "The WPLA is preemptive and the scope of WPLA is broadly

defined so as to include any claim or action brought for harm caused by the product.  The

purpose of the statute is to eliminate common law remedies and provide a single cause of

action."  *Bingham v. Blair LLC*, No. 10-5005, 2010 WL 1608881, at *2 (W.D. Wash. Apr. 19,

2010).  As Plaintiff's negligence and strict liability claims are preempted by the WPLA, they

must be dismissed.

 In the alternative, under New York law, Plaintiff's claim sounding in negligence must be

dismissed as duplicative of his claim sounding in breach of contract.  The *only* duty alleged in

the Fourth Cause of Action is identical to the one sounding in contract (a claim which fails for

reasons already stated).  Compare Complaint, ¶¶ 74, 76 and ¶ 93.  "It is a well-established

principle that a simple breach of contract is not to be considered a tort unless a legal duty

independent of the contract itself has been violated.  This legal duty must spring from

circumstances extraneous to, and not constituting elements of, the contract[.]"  *Clark-Fitzpatrick*

*v. Long Island R.R.*, 70 N.Y.2d 382, 389 (N.Y. 1987) (internal citations omitted).  Because the

Complaint identifies no such extraneous duty, the Fourth Cause of Action must be dismissed.

 The Fifth Cause of Action sounding in strict liability must be dismissed as a matter of

New York law because, according to the allegations in the Complaint, the "sensitive spy

---

[7] For this reason as well, the Court must dismiss the Second and Third Causes of Action.  Not only did Amazon expressly disclaim any such warranties, but the WPLA precludes Plaintiff from asserting those claims in this action.

software" on the CheckPoint Laptop was installed, not by its manufacturer Apple, but by CheckPoint.  (Complaint, ¶ 76.)  "Substantial modifications of a product from its original condition by a third party which render a safe product defective are not the responsibility of the manufacturer."  *Robinson v. Reed-Prentice*, 49 N.Y.2d 471, 479 (N.Y. 1980) (citations omitted).  On this point, Amazon also incorporates by reference those arguments set forth in Apple's memorandum of law in support of its motion to dismiss Plaintiff's claims against it.

For these reasons, the Fourth and Fifth Causes of Action should be dismissed.

### 3.    The Sixth, Seventh and Eighth Causes of Action Sounding in Fraud Must Be Dismissed.

In order to adequately state a cause of action sounding in fraud, as the Sixth, Seventh and Eighth Causes of Action purport to do, "the circumstances constituting fraud ... [must] be stated with particularity." Fed. R. Civ. P. 9(b).  Because the Complaint fails to identify with particularity any misrepresentations of fact made on the part of Amazon – and because any inference of fraud is conclusively rebutted by COUs – these causes of action must be dismissed for failure to state a cause of action.

On these claims, the Court may refer to the COUs on Amazon's motion seeking entry of judgment on the pleadings in order to evaluate whether the Complaint states a cause of action sounding in fraudulent concealment.

> When a complaint alleges, for example, that a document filed with the SEC failed to disclose certain facts, it is appropriate for the court, in considering a Rule 12(b)(6) motion, to examine the document to see whether or not those facts were disclosed. Or when the complaint alleges that such a document made a particular representation, the court may properly look at the document to see whether that representation was made. Consideration of such documents filed with the SEC is appropriate with respect to a nondisclosure or misrepresentation claim because no serious question as to their authenticity can exist, and because the court is to consider them on a Rule 12(b)(6) motion only to determine what the documents stated, and not to prove the truth of their contents.

21

*Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007), citing *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991). Such is the case here. The Court may consider the statements made to Plaintiff in the COUs to see whether the allegedly fraudulent representation was made to Plaintiff. On the contrary, the COUs expressly state that "Amazon does not warrant that product descriptions or other content of any Amazon Service is accurate, complete, reliable, current, or error-free." (COUs, at "Product Descriptions.") Where, as here, the Complaint fails to identify any misrepresentations of fact made with the intent to deceive – and the operative agreement between the parties expressly warns *against* relying on representations made in product descriptions – no cause of action sounding in fraud will lie.

Amazon also incorporates by reference those arguments set forth in Apple's memorandum of law in support of its motion to dismiss Plaintiff's Eighth Cause of Action.

Accordingly, the Sixth, Seventh and Eighth Causes of Action should be dismissed.

## C.   Evidence Before the Court Compels Dismissal

Amazon's tender of an offer of judgment to Plaintiff and deposit of funds with the Court moots the First Cause of Action sounding in breach of contract. Also, as set forth more fully above, Counts Two through Eight fail to state a cause of action upon which relief may be granted against Amazon. The Court need look no further in order to dispose of the claims asserted by Plaintiff against Amazon. But if the Court deems it necessary to look beyond the four corners of the pleadings and the operative agreement between Plaintiff and Amazon, evidence already before the Court compels the conclusion that this is a case of mistaken identity: the CheckPoint Laptop that was recovered from the storage facility on or around October 3, 2016, was *not* the New Laptop that was delivered to Plaintiff on June 23, 2016, and no amount of discovery will change that fact. Accordingly, and in the alternative, the Court should enter summary judgment in Amazon's favor on all causes of action asserted against it (including the First Cause of Action

22

sounding in breach of contract) because, even viewing all facts in the light most favorable to Plaintiff, no reasonable jury could conclude that Amazon delivered the CheckPoint Laptop to Plaintiff on June 23, 2016.

A movant is entitled to summary judgment if "there is no genuine issue as to any material fact and … is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" for these purposes when it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed. 2d 202 (1986). An issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In the absence of a genuine issue as to a material fact, the Court need not put the parties to the expense and inconvenience of additional discovery. *Seneca Beverage Corp. v. Healthnow N.Y., Inc.*, 200 F. App'x 25, 27 (2d Cir. 2006) (summary order) ("the party opposing summary judgment is not automatically entitled to discovery").

Moreover, "it is clear that a plaintiff cannot defeat a motion for summary judgment by merely … amplifying [conclusory allegations in the complaint] only with speculation about what discovery might uncover." *Contemporary Mission, Inc. v. U.S. Postal Serv.*, 648 F.2d 97, 107 (2d Cir. 1981) (affirming denial of Rule 56(f) motion and grant of summary judgment motion). "An opposing party's mere hope that further evidence may develop prior to trial is an insufficient basis upon which to justify the denial of the motion" for summary judgment. *Id.* at 107 (citation omitted).

In his written and spoken representations[8] to the Court, Plaintiff has stated the following:

- The New Laptop was delivered to him in shrink wrapped, new condition;

---

[8] These statements are properly before the Court on this motion as party admissions. Fed. R. Evid. 801(d)(2)(A) (excluding from the hearsay rule a statement "offered against an opposing party" that "was made by the party in an individual or representative capacity"); *see also Fincher v. County of Westchester*, 979 F. Supp. 989, 1005 (S.D.N.Y. 1997).

- The New Laptop did not have a sticker indicating that it was the Property of
  CheckPoint;

- Plaintiff gave the New Laptop to his estranged wife, Stephanie Scott; and

- Plaintiff was not present when Detective Caballero recovered the CheckPoint Laptop
  from Ms. Scott at the storage facility.

Plaintiff's own representations to the Court, coupled with CheckPoint's testimony that the laptop
that Detective Caballero delivered to it on or around October 17, 2016 was, in fact, the
CheckPoint Laptop – with the sticker identifying it as the Property of CheckPoint *still affixed to
the bottom of the device* – compel the conclusion that the New Laptop that Amazon delivered to
Plaintiff on June 23, 2016 was *not* the CheckPoint Laptop.

Over the course of this litigation, Plaintiff has claimed that he is pursuing this lawsuit as a
means to "get to the bottom" of questions that he has about the provenance of the CheckPoint
Laptop and how that device came to be in the possession of his estranged wife. *See., e.g.,*
Docket Doc. 81 ("Until the facts become clear, we do not know exactly what happened…
everyone need[s] to stay put in this case, until we find out what happened, who and why").
Amazon respectfully submits in response that, first, federal litigation is an inappropriate vehicle
by which to embark upon a fishing expedition based on nothing more than rank speculation. *See,
e.g., Tennenbaum Capital Partners LLC v. Kennedy*, No. 07 Civ. 9695, 2009 WL 2913679, at *5
(S.D.N.Y. Sept. 11, 2009), *aff'd*, 372 F. App'x 180 (2d Cir. 2010) ("the Court will not permit
[nonmovant] to engage in a fishing expedition based on mere speculation"). And second, the
fact that Plaintiff has questions about how his estranged wife came to be in possession of the
CheckPoint Laptop does not give him license to continue this litigation against Amazon. In
order to sustain causes of action against Amazon, he must identify a genuine issue of material

24

fact *as to Amazon's alleged liability to him*.  Because no amount of discovery will change what is already known – that Amazon delivered the New Laptop to Plaintiff and Detective Caballero retrieved the CheckPoint Laptop from Ms. Scott – the Court should dismiss all claims against Amazon and leave Plaintiff to pursue the answers to questions that he has concerning Ms. Scott and the CheckPoint Laptop in a more appropriate forum.

## **CONCLUSION**

For the reasons stated herein, Amazon respectfully requests that this Court enter judgment consistent with its Offer of Judgment and, upon entry of judgment, dismiss the First Cause of Action as moot and the remaining Causes of Action as failing to state a claim upon which relief may be granted or, in the alternative, enter summary judgment in favor of Amazon and against Plaintiff and dismiss all Causes of Action asserted against it with prejudice.

Dated:  New York, New York
        February 12, 2018

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

By:   /s/ Michael J. Goettig    
      Michael J. Goettig

1251 Avenue of the Americas, 21st Floor
New York, New York 10019
(212) 489-8230
*Attorneys for Defendant*
*Amazon.com, LLC*