UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

TYRONE HOLMES,

                            Plaintiff,

            - against -

APPLE INC., AMAZON.COM, LLC, and
CHECKPOINT FLUIDIC SYSTEMS
INTERNATIONAL, LTD.,

                            Defendants.

---

**OPINION AND ORDER**

17 Civ. 4557 (ER)

Ramos, D.J.:

    Tyrone Holmes ("Holmes" or "Plaintiff"), proceeding *pro se*, brings this lawsuit asserting

eight causes of action against Defendants Apple Inc. ("Apple"), Amazon.com, LLC ("Amazon"),

and CheckPoint Fluidic Systems International, Ltd. ("CheckPoint").  *See* Compl. (Doc 1).

CheckPoint moves to dismiss the claims against it for lack of personal jurisdiction.  *See* Doc. 48.

Apple moves for judgment on the pleadings, or in the alternative, summary judgment in its favor

on all claims.  *See* Doc. 97.  Amazon asks the Court to enter judgment against it on Holmes' first

cause of action and to dismiss his remaining seven claims.  *See* Doc. 91.  In the alternative, it

also seeks summary judgment on all claims.  *Id.*  Holmes has also moved to amend his

Complaint and join FedEx Ground Package System, Inc. ("FedEx") as a Defendant.  *See* Doc.

47.  For the following reasons, each of Defendants' motions is GRANTED and Holmes' motion

is DENIED.

# I.   FACTUAL BACKGROUND[1]

This case involves a convoluted tale of the sale, purchase, loss, and alleged re-sale of an Apple laptop computer.  On May 10, 2016, Apple sold Amazon a MacBook Pro laptop bearing the serial number C02RQ1T3G8WN.  Rule 56.1 Statement of Apple ("Apple 56.1") (Doc. 99) ¶ 1.  Amazon, in turn, sold that laptop to CheckPoint on June 2, 2016.  Rule 56.1 Statement of Amazon ("Amazon 56.1") (Doc. 100) ¶ 4.  That laptop was packaged for delivery in Breinigsville, Pennsylvania.  *Id.* ¶¶ 2–3.  CheckPoint received the computer by June 7, 2016, and an employee there installed a third-party tracking software, Kaseya, onto the laptop.  *Id.* ¶¶ 3–4.  That employee also affixed a "property of CheckPoint Pumps" sticker to the laptop.  *Id.*  CheckPoint subsequently attempted to ship the laptop to Dubai through FedEx; however, the laptop did not arrive.  *Id.* ¶¶ 5–6.  A CheckPoint employee filed a report with FedEx to notify it of the loss on June 15, 2016.  *Id.* ¶ 6.

On June 22, 2016, Holmes purchased an Apple MacBook Pro laptop and an AppleCare Protection Plan ("AppleCare") through Amazon.  *See* Compl. ¶ 21.  The laptop was listed on Amazon's website as "brand new" and Holmes understood that the product would be free from defects and that it would not contain spyware or malware.  *Id.* ¶¶ 21, 23–24.  The laptop sent to Holmes was among a batch of new MacBook Pro computers Amazon sourced from Apple, which was packaged for delivery in Lewisberry, Pennsylvania.  Amazon 56.1 ¶¶ 8–9.  Holmes received the laptop he ordered from Amazon on June 23, 2016.  *Id.* ¶ 10.  According to Holmes, that laptop also had the serial number C02RQ1T3G8WN.  Compl. ¶ 21.  When Holmes received the laptop, it was shrink-wrapped and did not contain any stickers on it.  *See* Doc. 54 (Transcript

---

[1] Here, Apple and Amazon have moved for judgment on the pleadings and, in the alternative, summary judgment. The Court will include facts from the Rule 56.1 Statements of Apple ("Apple 56.1") (Doc. 99) and Amazon ("Amazon 56.1") (Doc. 100), as well as Holmes' Complaint, which the Court accepts as true for purposes of the motions for judgment on the pleadings. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

of September 14, 2017 conference) at 3:19–22; Doc. 86 (Transcript of January 12, 2018 conference) at 5:13–18.

At some point, Holmes gave his wife, Stephanie Scott ("Scott") an Apple laptop.[2] Scott registered AppleCare in her name on June 25, 2016 for the laptop bearing the serial number C02RQ1T3G8WN. Apple 56.1 ¶ 12. According to CheckPoint, it was able to locate that laptop on July 23, 2016 using the Kaseya tracking software it had installed and determined that the computer was online and being used by Scott. *Id.* ¶ 15; *see also* Declaration of Ruston Mahoney in Support of CheckPoint's Motion to Dismiss for Lack of Jurisdiction ("Mahoney Decl.") (Doc. 51) Ex. E. CheckPoint subsequently relayed this information to FedEx, and FedEx filed a police report. *Id.* ¶¶ 16–17.

Months later, on September 9, 2016, Holmes received a call from New York City Police Department Detective Rodrigo Caballero. Compl. ¶ 36. Caballero told Holmes that he possessed a MacBook laptop that contained government software belonging to the Department of Defense. *Id.* He further told Holmes that he and other officers were outside Holmes' residence and wanted to retrieve the computer. *Id.* Holmes informed Caballero that he was in the midst of conducting a funeral service, and could not assist the officers. *Id.* ¶ 37.

The next day, Caballero again called Holmes in an attempt to retrieve the computer. *Id.* ¶ 38. At that time, Holmes told Caballero that he had given the computer to Scott, whose location he was unaware of. *Id.* The calls from Caballero, however, did not stop, and on September 12, 2016, Holmes retained counsel to represent him in the police investigation. *Id.* ¶¶ 39–40. That day, Holmes' counsel spoke with Caballero and learned that the computer in Scott's possession bearing the serial number C02RQ1T3G8WN actually belonged to CheckPoint, a contractor for

---

[2] According to Holmes, he and Scott are estranged. *See* Doc. 54 at 5:12.

the Department of Defense. *Id.* ¶ 41. According to Caballero, the computer had been purchased by CheckPoint, had been "outfitted" with "sensitive surveillance software," and was intended to be shipped to Dubai. *Id.* ¶ 42. Caballero further stated that if the computer was not returned, he had the authority to arrest Holmes. *Id.* ¶ 43. Holmes' counsel asked Caballero for verification of these allegations, and that same day, counsel received a letter from a vice president at CheckPoint explaining that CheckPoint had been tracking its laptop since the laptop left CheckPoint's facilities, that CheckPoint "legally collected ample information to prove that [Holmes] is in possession of property belonging to CheckPoint," that it simply sought the return of its property, and that it otherwise had "no knowledge or interest in" learning how Holmes came to possess CheckPoint's laptop. *See* Compl. Ex. B.

The next day, on September 13, 2016, Caballero sent Holmes' counsel an email confirming that the serial number of the CheckPoint computer was C02RQ1T3G8WN, which, according to Holmes, matched the serial number of the laptop he purchased through Amazon. *See* Compl. ¶ 47. Between then and September 21, 2016, Holmes attempted to contact Scott to facilitate the return of the computer. *Id.* ¶ 49. On September 21, 2016, Holmes' counsel informed Caballero that Holmes had done all he could to assist the NYPD and asked Caballero to stop contacting Holmes. *Id.* ¶ 50. In response, Caballero stated that he was planning to proceed with an arrest of Holmes for criminal possession of stolen property in the fourth degree. *Id.* ¶ 51. Holmes then hired a private investigator who was able to locate Scott. *Id.* ¶ 54. He then arranged for Scott's sister to visit her on October 1, 2016 so that she could persuade Scott to return the computer. *Id.* ¶ 56. On October 2, 2016, Holmes learned that the computer was in a public storage unit in Chelsea, New York, but that Scott did not wish to cooperate in returning the computer to CheckPoint. *Id.* ¶ 58. The next day, Holmes' counsel met with Caballero and

another NYPD officer to go to Scott's residence.  *Id.* ¶¶ 60–61.  After meeting with Caballero, Scott agreed to accompany the group to her storage unit.  *Id.* ¶ 62.  Scott turned over the laptop on October 4, 2016 at 7:30 p.m.  *See* Compl. Ex. E.  The "property of CheckPoint Pumps" sticker was still on the underside of the laptop.  Amazon 56.1 ¶ 26.

On June 16, 2017, Holmes filed the instant Complaint, raising eight causes of action:  (1) breach of contract against Apple and Amazon; (2) breach of express warranty against Apple and Amazon; (3) breach of implied warranty of merchantability against Apple and Amazon; (4) negligence against Apple, Amazon, and CheckPoint; (5) strict liability against Apple and Amazon; (6) fraudulent concealment against Apple and Amazon; (7) fraud in the inducement and misrepresentation against Apple and Amazon; and (8) false advertising and unfair business practices under § 349 of the New York General Business Law against Apple and Amazon.[3]

## II.    LEGAL STANDARD

### A.    Dismissal Under Rule 12(b)(2)

"A plaintiff opposing a motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction has the burden of establishing that the court has jurisdiction over the defendant." *BHC Interim Funding, LP v. Bracewell & Patterson, LLP*, No. 02 Civ. 4695 (LTS) (HBP), 2003 WL 21467544, at *1 (S.D.N.Y. June 25, 2003) (citing *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999)).  To meet this burden where there has been no discovery or evidentiary hearing, the plaintiff must plead facts sufficient for a prima facie showing of jurisdiction.  *Id.*  The Court construes all of the plaintiff's allegations as true and resolves all doubts in his favor.  *Casville Invs., Ltd. v. Kates*, No. 12 Civ. 6968 (RA), 2013 WL 3465816, at *3 (S.D.N.Y. July 8, 2013) (citing *Porina v. Marward Shipping Co.*, 521 F.3d

---

[3] Holmes' proposed Amended Complaint brings a ninth cause of action against FedEx for negligence.  *See* Doc. 47-1.

122, 126 (2d Cir. 2008)). "However, a plaintiff may not rely on conclusory statements without any supporting facts, as such allegations would 'lack the factual specificity necessary to confer jurisdiction.'" *Art Assure Ltd., LLC v. Artmentum GmbH*, No. 14 Civ. 3756 (LGS), 2014 WL 5757545, at *2 (S.D.N.Y. Nov. 4, 2014) (quoting *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 185 (2d Cir. 1998). As 12(b)(2) motions are "inherently . . . matter[s] requiring the resolution of factual issues outside of the pleadings," courts may rely on additional materials when ruling on such motions. *John Hancock Prop. & Cas. Ins. Co. v. Universale Reinsurance Co.*, No. 91 Civ. 3644 (CES), 1992 WL 26765, at *1 n.1 (S.D.N.Y. Feb. 5, 1992); *Darby Trading Inc. v. Shell Int'l Trading and Shipping Co.*, 568 F. Supp. 2d 329, 334 (S.D.N.Y. 2008).

In a diversity action, personal jurisdiction is determined in accordance with the law of the forum in which the federal court sits. *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001). This determination involves a two-step analysis. *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996). In New York, the Court must first determine whether personal jurisdiction is appropriate pursuant to the State's general jurisdiction statute, C.P.L.R. § 301, or its long arm jurisdiction statute, C.P.L.R. § 302. If and only if the Court's exercise of personal jurisdiction is deemed appropriate according to New York law, the second step is an evaluation of whether the Court's exercise of personal jurisdiction comports with the Due Process Clause of the United States Constitution. *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163–64 (2d Cir. 2010).

### B.    Dismissal Under Rule 12(c)

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The Court applies the same standard of review to a Rule 12(c) motion as it

does to a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6). *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006) (citing *Karedes v. Ackerley Grp. Inc.*, 423 F.3d 107, 113 (2d Cir. 2005)). On a motion to dismiss pursuant to Rule 12(b)(6), the Court is required to accept as true all factual allegations in the complaint and to draw all reasonable inferences in the plaintiff's favor. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014). However, the Court is not required to credit legal conclusions, bare assertions or conclusory allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–81 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must contain enough factual matter to state a claim to relief that is plausible on its face. *Id.* at 678 (citing *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Accordingly, a plaintiff is required to support his claims with sufficient factual allegations to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* at 680 (quoting *Twombly*, 550 U.S. at 570).

### C. Summary Judgment

Under Rule 12(d), a court may convert a Rule 12(c) motion for entry of judgment to a Rule 56 motion for summary judgment when the parties present evidence outside the pleadings and are "given the reasonable opportunity to present all material that is pertinent to the motion." *Certified Multi-media Sols., Ltd. v. Preferred Contractors Ins. Co. Risk Retention Grp., LLC*, 150 F. Supp. 3d 228, 236 (E.D.N.Y. 2015) *aff'd* 674 F. App'x 45 (2d Cir. 2017) (quoting Fed. R. Civ. P. 15(d)). Formal notice to the parties is ordinarily not necessary "where a party should

reasonably have recognized the possibility that the motion might be converted into one for summary judgment and was neither taken by surprise nor deprived of a reasonable opportunity to meet facts outside the pleadings."  *Galiotti v. Green*, 475 F. App'x 403, 404 (2d Cir. 2012), *as amended* (Aug. 30, 2012) (internal quotation and punctuation marks omitted).

Summary judgment is only appropriate where the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, [and] other materials" show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a)–(c).  "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky,* 559 F.3d 133, 137 (2d Cir. 2009)).  A fact is "material" if it might affect the outcome of the litigation under the governing law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Atl. Mut. Ins. Co. v. CSX Lines, L.L.C.*, 432 F.3d 428, 433 (2d Cir. 2005).  If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Saenger v. Montefiore Medical Center*, 706 F. Supp. 2d 494, 504 (S.D.N.Y. 2010) (quoting *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008)).

In deciding a motion for summary judgment, the Court must "'construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all

reasonable inferences against the movant.'" *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.,* 368 F.3d 123, 126 (2d Cir. 2004)). However, a motion for summary judgment cannot be defeated on the basis of conclusory assertions, speculation, or unsupported alternative explanations of facts. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008); *see also Senno*, 812 F. Supp. 2d at 467 (citing *Scotto v. Almenas,* 143 F.3d 105, 114 (2d Cir. 1998)). The non-moving party must do more than show that there is "some metaphysical doubt as to the material facts." *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). To defeat a motion for summary judgment, "the non-moving party must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor." *Senno*, 812 F. Supp. 2d at 467–68 (citing *Anderson*, 477 U.S. at 256–57).

Nonetheless, "summary judgment may not be granted simply because the court believes that the plaintiff will be unable to meet his or her burden of persuasion at trial. There must either be a lack of evidence in support of the plaintiff's position or the evidence must be so overwhelmingly tilted in one direction that any contrary finding would constitute clear error." *Danzer v. Norden Systems, Inc.*, 151 F.3d 50, 54 (2d Cir. 1998) (internal citations omitted).

## III.    CHECKPOINT'S MOTION TO DISMISS

CheckPoint moves to dismiss Holmes' negligence claim against it because CheckPoint has insufficient contacts with New York to render personal jurisdiction proper under New York law. *See* Memorandum of Law in Support of CheckPoint's Motion to Dismiss ("CheckPoint Mem.") (Doc. 52), at 4–6.

## A.      Personal Jurisdiction under C.P.L.R. § 301

C.P.L.R § 301 applies only to corporate defendants who are present in New York "with a fair measure of permanence and continuity." *Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*, 77 N.Y.2d 28, 34 (1990). A company that engages in only "occasional or casual business" or who "merely solicits New York customers" will not be subject to general personal jurisdiction in New York. *Brown v. Web.com Grp., Inc.*, 57 F. Supp. 3d 345, 354 (S.D.N.Y. 2014) (internal quotations and punctuation marks omitted) (quoting *Bossey ex rel Bossey v. Camelback Ski Corp.*, 21 Misc.3d 1116(A), 2008 WL 4615680, at *2 (N.Y. Sup. Ct. Oct. 20, 2008)).

Here, CheckPoint has no physical presence in New York. *See* Affidavit of Andrew C. Elliot in Support of CheckPoint's Motion to Dismiss ("Elliot Aff.") (Doc. 49), at 2. It has no agents, officers, directors, or employees in New York. *Id.* It has never been authorized to conduct business in New York. *Id.* CheckPoint was able to identify only five sales between August 1, 2013 and June 16, 2017 that contained billing and/or shipping addresses in New York. *See* Declaration of Bobbie Jo Bridges in Support of CheckPoint's Motion to Dismiss ("Bridges Decl.") (Doc. 64) ¶ 4.[4] The total amount of these sales, $15,310.91, constitutes "a few hundredths of a percent of CheckPoint's sales in dollar value during the same period." *Id.* ¶ 10.

In opposition, Holmes points to the fact that CheckPoint operates a website that New York customers can see and use and that CheckPoint has been subject to jurisdiction in other cases in New York courts. *See* Affidavit in Opposition to Motion to Dismiss and Cross-Motion for Discovery ("Holmes Aff.") (Doc. 56). Holmes provides no support for his argument that the operation of a website, without more, can subject a company to general personal jurisdiction in

---

[4] CheckPoint's records show 27,139 sales records during this period. *Id.* ¶ 5.

New York; in fact, courts routinely determine that it is insufficient to confer jurisdiction. *See ISI Brands, Inc. v. KCC Int'l, Inc.*, 458 F. Supp. 2d 81, 87–88 (E.D.N.Y. 2006) (collecting cases). Further, although CheckPoint has been a defendant in one New York proceeding brought to the Court's attention, CheckPoint never appeared in that case, which did not require the establishment of personal jurisdiction over CheckPoint because it was a proceeding to domesticate a foreign judgment. *See Marine Hub Pte. Ltd. v. CheckPoint Fluidic Sys. Int'l Ltd.*, No. 601203/2010 (Sup. Ct. 2010); *see also Lenchyshyn v. Pelko Elec., Inc.*, 723 N.Y.S.2d 285, 289 (4th Dep't 2001) ("[A] party seeking recognition in New York of a foreign money judgment (whether of a sister state or foreign country) need not establish a basis for the exercise of personal jurisdiction over the judgment debtor by the New York courts."). Holmes, therefore, has not plead facts—even in his opposition—that would support a *prima facie* finding of general personal jurisdiction.

### B. Personal Jurisdiction under C.P.L.R. § 302(a)

C.P.L.R. § 302(a) allows a court to exercise personal jurisdiction over a non-domiciliary defendant who: (1) "transacts any business within the state or contracts anywhere to supply goods or services in the state;" (2) "commits a tortious act within the state . . .;" or (3) "commits a tortious act without the state causing injury to person or property within the state . . . [if he] (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce[.]" *Mount Whitney Investments, LLP v. Goldman Morgenstern & Partners Consulting, LLC*, No. 15 Civ. 4479 (ER), 2017 WL 1102669, at *4 (S.D.N.Y. Mar. 23, 2017) (quoting C.P.L.R. § 302(a)(1–3)).

Holmes argues that CheckPoint committed a tort outside the state of New York that it knew would have consequences in New York. *See* Holmes Aff. ¶¶ 24–37. Specifically, he argues that CheckPoint reported its computer as stolen, and that its discussions with FedEx and the NYPD about the computer led both "to assume incorrectly that there was a theft," which caused Holmes emotional distress during the period in which CheckPoint's computer was in his wife's possession. *Id.* The "tort" that Holmes alleges CheckPoint committed, therefore, appears to be a negligence claim based on the reporting of its missing computer. *Id.*; *see* Compl. ¶¶ 92–96 (bringing a cause of action against CheckPoint for negligence). But Holmes has put forward no support for his argument that an entity can be held liable for negligence on the basis of reporting a theft and cooperating with authorities, even if the report was inaccurate.[5] To the extent that Holmes has attempted to raise a claim for malicious prosecution, a civilian "who merely furnishes information to law enforcement authorities . . . will not be held liable for malicious prosecution." *Lupski v. County of Nassau*, 822 N.Y.S.2d 112, 114 (2d Dep't 2006). Instead, a plaintiff must allege that the defendant "played an active role in the prosecution, such as giving advice and encouragement and importuning the authorities to act." *Id.* (quoting *Viza v. Town of Greece*, 463 N.Y.S.2d 970, 971 (1983)). Holmes' allegations that CheckPoint communicated with FedEx and the NYPD about the loss of its computer, and "reasonably expect[ed]" consequences to flow within New York, are insufficient to confer personal jurisdiction on courts in New York, because they do not constitute allegations of a tortious act as required by C.P.L.R. § 302(a).

---

[5] The record is unclear as to how CheckPoint's computer came to be in Holmes' possession, whether it was stolen, and if so, who stole the computer. No party in this case has asserted that Homes was responsible for CheckPoint's initial loss of the computer.

### C.     Holmes' Discovery Motion

Holmes seeks discovery to determine what contacts CheckPoint has with the State of New York.  *See* Holmes Aff. ¶ 70.  Specifically, he seeks to serve interrogatories, a request for production of documents, and a notice of deposition of one CheckPoint employee.  *Id.* ¶ 71. Holmes argues that he is entitled to determine whether CheckPoint had banking or investment banking contacts in New York, retained any law, consulting, or public relations firms based in New York, hosted business meetings in New York, or made any business purchases in New York.  *Id.* ¶ 72.

Holmes' request must be denied.  *See In re Angeln GmBH & Co. KG*, 510 F. App'x 90, 92–93 (2d Cir. 2013) (finding that courts may decline to permit jurisdictional discovery where a plaintiff has not made out a prima facie case for jurisdiction).  Even if those business contacts exist, they would be insufficient for purposes of general personal jurisdiction.  *See Brown*, 57 F. Supp. 3d at 354.  They would also be insufficient for the purposes of New York's long-arm statute, since those contacts would be unrelated to CheckPoint's involvement in this case.  *Id.* at 356 (explaining that a defendant must purposefully avail itself of conducting business activities in New York, and that the dispute in the litigation must arise out of one such transaction).  *See Haber v. United States*, 823 F.3d 746, 753 (2d Cir. 2016) (noting that jurisdictional discovery is inappropriate if the plaintiff fails to show how the information to be obtained bears on the jurisdictional issue).  The Court therefore GRANTS CheckPoint's motion to dismiss.[6]

---

[6] Because the Court finds that there is no personal jurisdiction under the C.P.L.R., it does not reach the constitutional question of whether the imposition of jurisdiction in this case would comport with traditional notions of fair play and substantial justice.

## IV.    APPLE'S MOTION FOR ENTRY OF JUDGMENT

Apple moves for judgment on the pleadings for each of Holmes' eight claims. Memorandum of Law in Support of Apple's Motion for Judgment ("Apple Mem.") (Doc. 98), at 2.  In the alternative, it moves for summary judgment on those claims based on the testimony of Apple employee Tim O'Neil.  *Id.*

### A.    Breach of Contract and Express Warranty Claims

Apple argues that Holmes has not stated a claim for either breach of contract or breach of warranty (claims one and two) because he has not alleged the existence of a contract between himself and Apple.  Apple Mem. at 8.

Under New York law, the existence of a contract between the parties is an essential element of both a breach of contract claim and a breach of express warranty claim.  *See Nat'l Mkt. Share, Inc. v. Sterling Nat'l Bank*, 392 F.3d 520, 525 (2d Cir. 2004); *Promuto v. Waste Mgmt., Inc.*, 44 F. Supp. 2d 628, 642 (S.D.N.Y. 1999).  In his Complaint, Holmes alleged that he purchased his laptop through Amazon, but that Amazon and Apple both "contracted" to provide him the laptop and "warranted and represented" that the laptop was "brand-new" and "free from any and all spy software capable of tracking [his] activities."  Compl. ¶¶ 33, 74, 81.  But these allegations are belied by the receipt Holmes provided, which shows that the seller of the laptop and AppleCare was Amazon, not Apple.  *Id.* Ex. A; *accord Xi Wei Lin v. Chinese Staff & Workers' Ass'n*, No. 11 Civ. 3944 (RJS), 2012 WL 5457493, at *4 (S.D.N.Y. Nov. 8, 2012) (noting that a court need not accept as true "pleadings that are contradicted by other matters asserted or relied upon or incorporated by reference") (quoting *Fisk v. Letterman*, 401 F. Supp. 2d 362, 368 (S.D.N.Y. 2005)).

Holmes argues that AppleCare, the laptop protection plan, is the contract between him and Apple that Apple breached by allowing him to receive CheckPoint's laptop. *See* Memorandum of Law in Opposition to Defendants' Motions for Judgement ("Opp.") (Doc. 105), at 9. Apple raises two points in response. First, it argues that it has no record of Holmes registering AppleCare for the CheckPoint laptop; instead, Scott registered an AppleCare plan (although it is unclear if this was the AppleCare plan purchased by Holmes) for the CheckPoint laptop on June 25, 2016. Apple Mem. at 11 (citing Declaration of Tim O'Neil in Support of Apple's Motion for Entry of Judgment ("O'Neil Decl.") (Doc. 102) ¶¶ 9–12). Thus, they argue, there was no contract between Apple and Holmes. Second, Apple argues that Holmes has not alleged a breach of the AppleCare plan; rather, his allegations are that the Apple laptop he received from Amazon was defective because it contained the Kaseya tracking software. Apple Mem. at 10–11; Reply Memorandum of Law in Support of Apple's Motion for Entry of Judgment ("Apple Reply Mem.") (Doc. 113), at 3–4. AppleCare is a service contract that provides for Apple support in replacing or repairing laptops in certain circumstances, and specifically excludes repairs based on the effects of third-party products. *See* O'Neil Decl. Ex. D.[7] Holmes' claims in the first and second causes of action, however, are based on the theory that the laptop was defective because CheckPoint subsequently installed tracking software on it. *See* Compl. ¶¶ 76, 83. By its terms, therefore, the AppleCare agreement is not triggered. Accordingly, the Court finds that the AppleCare agreement is not germane to the dispute between Holmes and Apple; further, because Holmes has not pointed to a contract with Apple

---

[7] Although Holmes did not attach the AppleCare agreement to his complaint, the Court may properly consider it on a motion for judgment on the pleadings. *See City of Brockton Ret. Sys. v. Avon Prods., Inc.*, No. 11 Civ. 4665 (PGG), 2014 WL 4832321, at *12 (S.D.N.Y. Sept. 29, 2014) (internal quotation marks and citations omitted) (noting that a court may consider any documents that that the Complaint "relies heavily upon its terms and effect, thereby rendering the document integral to the complaint").

that governs the sale of a new laptop, his claims for breach of contract and breach of express warranty against Apple must fail. The Court GRANTS Apple's motion for entry of judgment on these two claims.

### B. Breach of Implied Warranty, Negligence, and Strict Liability

Apple argues that it should also be granted judgement on the pleadings for Holmes' breach of implied warranty, negligence, and strict liability claims because the injuries Holmes alleges could not have been caused by Apple. Apple Mem. at 12.

Under New York law, there is an implied warranty of merchantability, but it does not protect consumers where the alleged defect "was not attributable to a manufacturing or retail defect." *Fagan v. AmerisourceBergen Corp.*, 356 F. Supp. 2d 198, 215 (E.D.N.Y. 2004) *vacated on other grounds* 163 F. App'x 37 (2d Cir. 2006) (quoting *Elsroth v. Johnson & Johnson*, 700 F. Supp. 151, 160 (S.D.N.Y. 1988). Similarly, a manufacturer cannot be held liable for either negligence or strict liability when a "subsequent modification" is made after the product leaves the manufacturer that "alters the product and is the proximate cause of plaintiff's injuries." *Id.* at 206, 215 (citing *Elsroth*, 700 F. Supp. at 159); *see also Duval v. Delta Int'l Machinery Corp.*, 13 Civ. 4270 (GHW), 2015 WL 4522911, at *5 (S.D.N.Y. July 27, 2015) (recognizing the availability of the substantial modification defense). Here, Holmes alleges that Apple is liable for his laptop, which he claims is defective because it contained CheckPoint's Kaseya tracking software. Compl. ¶¶ 89, 94, 101–02. However, Holmes' own allegations makes clear that CheckPoint, not Apple, installed this software. *Id.* ¶ 76 (alleging that the laptop he received from Amazon "contained sensitive spy software, installed by Defendant[] CheckPoint Fluidic Systems

International, Ltd.").[8]  Holmes has therefore failed to state a claim for relief against Apple, and the Court GRANTS Apple's motion for judgment on the pleadings with respect to Holmes' third, fourth, and fifth claims.

### C.    Fraudulent Concealment and Fraud in the Inducement

Apple moves for judgment on Holmes' sixth and seventh claims, arguing that he has not identified any specific misrepresentations or actionable omissions by Apple, as required under Rule 9(b) of the Federal Rules of Civil Procedure.  Apple Mem. at 17, 20.

Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  A complaint must therefore:  "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007) (quoting *Novak v. Kasaks*, 216 F.3d 300, 306 (2d Cir. 2000)).  Allegations that are merely conclusory or "unsupported by factual allegations" cannot meet this standard.  *Id.* (citing *Luce v. Edelstein*, 802 F.2d 49, 54 (2d Cir. 1986)).  For a fraudulent concealment claim, a defendant may only be liable for an omission of a material fact if it had a "duty to disclose" that fact.  *Schwatka v. Super Millwork, Inc.*, 965 N.Y.S.2d 547, 551 (2d Dep't 2013).  Specifically, under New York law, a defendant may be held liable if it "has superior knowledge or means of knowledge, such that the transaction without disclosure is rendered inherently unfair."  *Martin Hilti Family Tr. v. Knoedler Gallery, LLC*, 137 F. Supp. 3d 430, 484 (S.D.N.Y. 2015) (quoting *Miele v. Am. Tobacco Co.*, 770 N.Y.S.2d 386, 391 (2d Dep't 2003)).

---

[8] For this reason, the Court agrees with Apple that Holmes' reference to the innocent bystander rule is inapposite, as that rule only applies to the manufacturer of a defective product, not the manufacturer of a product that is subsequently modified and becomes defective.  *See* Apple Reply Mem. at 5–6.

Apple argues that Holmes has only pleaded that Apple "had full knowledge of the defects" in the laptop sold to him by Amazon—presumably the presence of the Kaseya tracking software—and that Apple "failed to notify" him of this, without providing any supporting factual allegations. *See* Apple Mem. at 18.[9] Holmes makes no factual allegations regarding Apple's knowledge of the installation of the software or when Apple became aware of any "defects" on the computer, if ever. Holmes does not attempt to address these deficiencies in his opposition. Because Holmes' only allegations with respect to fraudulent concealment are conclusory, he has not stated a claim, and the Court GRANTS Apple's motion for judgment on the pleadings.

With respect to Holmes' seventh claim, for fraud in the inducement, Apple argues that Holmes has not alleged *any* statement made by Apple, much less any statement with specificity. *See* Apple Mem. at 20. Throughout the complaint, Holmes refers solely to "above representations" or "various representations concerning" the laptop without detailing the contents of the representations, who made the representations, when and where they were made, and why they were fraudulent at the time they were made. *See* Compl. ¶¶ 23, 116. This falls far short of the standard imposed by Rule 9(b), and therefore the Court GRANTS Apple's motion for judgment on Holmes' seventh claim.

Amazon also argues for judgment on the pleadings for these fraud claims based on Rule 9(b)'s heightened pleading standard. Memorandum of Law in Support of Amazon's Motion for Judgment ("Amazon Mem.") (Doc. 92), at 21. For the reasons stated above, Amazon's motion is also GRANTED.

---

[9] Although Holmes' pleadings do not state with particularity what the defect Apple allegedly concealed was, the Court understands the defect alleged to be the same defect Holmes described in earlier causes of action—the presence of the Kaseya tracking software. *See* Compl. ¶¶ 76, 83, 89 (describing the laptop received from Amazon as defective because it contained tracking software).

### D. False Advertising and Unfair Business Practices

Holmes' eighth claim alleges that Amazon and Apple engaged in false advertising and unfair business practices prohibited by New York General Business Law § 349. *See* Compl. ¶ 121. Apple argues that Holmes has failed to allege a violation of § 349 because he has not alleged that Apple made misstatements while engaged in "consumer-oriented conduct." Apple Mem. at 21–22.

Private contract disputes do not fall within the ambit of § 349; rather, a plaintiff bringing a § 349 claim must allege conduct that has "a broader impact on consumers at large." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (1995). Thus, the allegedly deceptive conduct "may not be limited to just the parties." *Nungesser v. Columbia Univ.*, 169 F. Supp. 3d 353, 373 (S.D.N.Y. 2016) (quoting *Teller v. Bill Hayes, Ltd.*, 630 N.Y.S.2d 769, 772 (2d Dep't 1995)). Holmes has failed to allege that Apple's conduct "affected anyone except him." *Id.* He has not, for example, alleged any facts to suggest that Apple routinely sells computers to third parties marked as "new" when they are actually used and contain third party surveillance software. *See* Compl; *see also Koch v. Greenberg*, 14 F. Supp. 3d 247, 261 (S.D.N.Y. 2014) ("Where the acts complained of potentially affect similarly situated consumers, the consumer-oriented prong will be met.") (internal citations and quotations marks omitted). Indeed, Holmes himself has noted that his allegations suggest a "bizarre fact pattern." Compl. ¶ 14 (Introductory Statement). Based on the factual allegations in the Complaint, the Court finds that Holmes has not alleged consumer-oriented conduct within the meaning of § 349; therefore, the Court GRANTS Apple's motion for judgment on the pleadings.

Amazon has joined in Apple's arguments regarding dismissal of the eighth claim. *See* Amazon Mem. at 22. Judgment on that claim will also be entered in favor of Amazon.

## V.  AMAZON'S MOTION FOR ENTRY OF JUDGMENT

The Court has already entered judgment in favor of Amazon on Holmes' sixth, seventh, and eighth claims.  Amazon also seeks the entry of judgment in its favor on Holmes' second through fifth claims, and seeks entry of judgment against it on Holmes' first claim pursuant to its Rule 68 offer of judgment.  *See* Amazon Mem. at 1–2.

Specifically, Amazon presented Holmes with an offer of judgment in the amount of $2,351.12, the value of the Apple MacBook Pro and AppleCare Holmes purchased on June 22, 2014.  *See* Declaration of Michael Goetting in Support of Amazon's Motion for Entry of Judgment and Dismissal ("Goetting Decl.") (Doc. 93) Ex. A.  On January 12, 2018, Holmes rejected that offer.  *Id.* Ex. B.  Amazon has since deposited those funds ($2,351.12) with the Clerk of Court.  *See* Doc. 83; Goetting Decl. Ex. C.  Contending that the offer of judgment against it and the award of $2,351.12 provides Holmes with complete relief on his breach of contract claim, Amazon asks the Court to enter judgment consistent with its offer pursuant to Rule 68 of the Federal Rules of Civil Procedure.  *See* Amazon Mem. at 10–16.

### A.  Breach of Contract Claim

Holmes alleges that Amazon breached their contract by selling him a laptop that contained "sensitive spy software" rather than a brand new Apple laptop.  *See* Compl. ¶¶ 73–76. When Holmes entered into the purchase agreement with Amazon, he also agreed to Amazon's conditions of use.  *See* Declaration of Jesse Jensen in Support of Amazon's Motion for Entry of Judgment ("Jensen Decl.") (Doc. 94) ¶¶ 5–6.[10]  In his opposition, Holmes does not dispute that

---

[10] The Court may consider the conditions of use in determining the range of Holmes' possible recovery on his breach of contract claim because that document is "integral" to the Complaint.  *See City of Brockton Ret. Sys. v. Avon Prods., Inc.*, No. 11 Civ. 4665 (PGG), 2014 WL 4832321, at *12 (S.D.N.Y. Sept. 29, 2014) (internal quotation marks and citations omitted) (noting that a court may consider any documents that that the Complaint "relies heavily upon its terms and effect, thereby rendering the document integral to the complaint").

he was notified that by purchasing a product on Amazon, he agreed to its conditions of use. *See* Opp. at 6 (conceding that he signed the contract but disputing that the remedy limitation in the contract applies to his tort claims against Amazon).

The agreement provided that "if a product offered by Amazon itself is not as described, [Holmes'] sole remedy is to return it in unused condition" and receive a refund. Jensen Decl. Ex. B at 2. The agreement also provided that "the laws of the state of Washington . . . will govern these conditions of use and any dispute of any sort that might arise between [Holmes] and Amazon." *Id.* at 4.

Under Washington law, agreements like Amazon's are enforceable. *See Elkin v. Amazon Servs., LLC*, 84 F. Supp. 3d 1172, 1175 n.5 (W.D. Wash. 2014). Washington law, adopting provisions of the Uniform Commercial Code, allows for a contract to limit a buyer's remedy "to return of the goods and repayment of the price." *See* Wash. Rev. Code § 62A.2-719(1)(a); *O.B. Williams Co. v. S.A. Benheim West, Inc.*, No. Co8-1155 (JLR), 2010 WL 11526889, at *11–12 (W.D. Wash. July 13, 2010) (applying this provision). For his part, Holmes does not contend that the contract is unconscionable or that it does not limit remedies in this way; he argues, instead, that the contract's limitation on remedies should not bar recovery on his remaining seven claims against Amazon. *See* Opp. at 6 ("Regarding defendant's total reliance on the 'exclusive remedy' argument, the plain meaning of that phrase is the return and reimburse remedy is the exclusive remedy *for a breach of contract claim*.").

Holmes paid $2,351.12 for his MacBook Pro laptop and AppleCare. *See* Compl. Ex. A. Without conceding liability, Amazon has presented Holmes with an offer of judgment in that amount. *See* Goetting Decl. Ex. A. In the Second Circuit, an unaccepted offer of judgment pursuant to Rule 68 combined with the entry of judgment against a defendant, moots a plaintiff's

claim. *See Leyse v. Lifetime Entm't Servs.*, 679 F. App'x 44, 48 (2d Cir. 2017) ("[A]n unaccepted Fed. R. Civ. P. 68 offer for complete relief[,] . . . if rejected, may nonetheless permit a court to enter a judgment in the plaintiff's favor."); *Bais Yaakov of Spring Valley v. Educ. Testing Serv.*, 251 F. Supp. 3d 724, 739 (S.D.N.Y. 2017) ("[A] claim for individual relief may be mooted by tender and entry of judgment."). Both parties agree that Amazon's deposit of $2,351.12, coupled with an offer of judgment against it, provides Holmes with the relief he is entitled to on the breach of contract claim only. The Court therefore finds that Amazon has fulfilled the conditions required to moot Holmes' first claim, GRANTS Amazon's Rule 68 motion, and enters judgment in favor of Holmes in the amount if $2,351.12.

### B. Breach of Warranty Claims

Holmes' second and third claims against Amazon seek relief for breach of express warranty and breach of implied warranty. *See* Compl. ¶¶ 80–91. Amazon argues that these claims must fail because the conditions of use disclaim express and implied warranties. *See* Amazon Mem. at 17–19.

The conditions of use provide that Amazon "does not warrant that product descriptions or other content of any Amazon Service is accurate, complete, reliable, current, or error-free." Jensen Decl. Ex. B at 2. Amazon further "disclaim[ed] all warranties, express or implied, including, but not limited to, implied warranties of merchantability and fitness for a particular purpose." *Id.* It also stated that all products were "provided by Amazon on an 'as is' and 'as available' basis." *Id.* Amazon argues that these disclaimers prevent Holmes from bringing claims for breach of implied or express warranties. Amazon Mem. at 18–19. Holmes argues that the disclaimers should not be enforced because they are against public policy. Opp. at 6.

To demonstrate that the disclaimers are valid under Washington law,[11] Amazon cites to a 1964 Washington Supreme Court case, *McInnis & Co. v. Western Tractor Equipment Co.*, 388 P.2d 562 (Wash. 1964), which holds that a seller may expressly disclaim both express and implied warranties in a contract. *See* Amazon Mem. at 19. But Amazon neglects to mention subsequent Washington Supreme Court cases that altered this landscape, including *Berg v. Stromme*:

> Thirty years ago this court set the standard for applying warranty disclaimers in transactions involving a noncommercial entity. According to the decision in *Berg*, warranty disclaimers in a contract must be both (1) explicitly negotiated and (2) set forth with particularity. The presumption leans against the warranty disclaimer, and the burden lies on the party seeking to include the disclaimer to prove its legality.

*Puget Sound Fin., L.L.C. v. Unisearch, Inc.*, 47 P.3d 940, 945 (Wash. 2002) (internal citations omitted); *see also Cozumel Leasing, LLC v. Int'l Jets Inc.*, No. 16 Civ. 5089 (RJB), 2018 WL 1737778, at *15 (W.D. Wash. Apr. 11, 2018) (applying *Berg* analysis for a warranty disclaimer in a transaction involving an LLC). Washington law "generally disfavors warranty disclaimers," and they are therefore "ineffectual unless the parties explicitly negotiate them and set them forth with particularity." *Mattingly v. Palmer Ridge Homes LLC*, 238 P.3d 505, 514 (Wash. Ct. App. 2010) (finding the explicit negotiation prong met where the parties negotiated changes to other parts of the agreement containing the disclaimer). Although Amazon has addressed the specificity of the disclaimers, *see* Amazon Mem. at 18, it has not put forward any argument regarding how the disclaimers were "explicitly negotiated." Therefore, Amazon has not shown that it is entitled to judgment on the pleadings at this stage and the Court DENIES its motion for judgment on Holmes' second and third claims.

---

[11] Because breach of express and implied warranty are contract-based claims, Washington law, which governs the contract, applies. *See Benefield v. Pfizer Inc.*, 103 F. Supp. 3d 449, 457 (S.D.N.Y. 2015).

### C.     Common Law Negligence and Strict Products Liability Claims

Amazon argues that the fourth and fifth causes of action, for common law negligence and strict products liability, should be dismissed because they are preempted by the Washington Product Liability Act ("WPLA"), Wash. Rev. Code § 7.72.010 *et seq.*  Amazon Mem. at 19.[12]

"The WPLA is the exclusive remedy for product liability claims . . . [and] supplants all common law claims or actions based on harm caused by a product."  *Blangeres v. United Sttaes Seamless, Inc.*, 725 F. App'x 511, 514 (9th Cir. 2018) (quoting *Macias v. Saberhagen Holdings, Inc.*, 282 P.3d 1069, 1073 (Wash. 2012)); *see also City of Seattle v. Monsanto Co.*, 237 F. Supp. 3d 1096, 1102 (W.D. Wash. 2017) ("The WPLA 'creates a single cause of action for product-related harms that supplants previously existing common law remedies.'") (quoting *Wash. Water Power Co. v. Graybar Elec. Co.*, 774 P.2d 1199, 1207 (Wash. 1989)).

Amazon points to *Bingham v. Blair LLC* in support of its argument that because Holmes' claims for negligence and strict liability are preempted by the WPLA, they should be dismissed. Amazon Mem. at 20.  But in *Bingham*, the Western District of Washington denied the motion to dismiss and instead permitted the plaintiffs to amend their claims and "fashion one cause of action pursuant to the WPLA."  *Bingham v. Blair LLC*, No. 10 Civ. 5005 (RBL), 2010 WL

---

[12] Amazon asserts that the Washington Product Liability Act is relevant because under its contract with Holmes, "the parties agreed that the laws of the state of Washington would apply to 'any dispute of any sort that might arise between [Plaintiff] and Amazon.'"  *Id.* (quoting Jensen Decl. Ex. B).  Courts sitting in New York are bound to "decide the scope of [choice of law] clauses under New York law, not under the law selected by the clause."  *Fin. One Pub. Co. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 333 (2d Cir. 2005).  In general, the Second Circuit has observed "a reluctance on the part of New York courts to construe contractual choice-of-law clauses broadly to encompass extra-contractual causes of action."  *Id.* at 334.  However, it has maintained that while a choice-of-law provision in a contract should be read narrowly, "presumably a contractual choice-of-law clause could be drafted broadly enough to reach such tort claims."  *Id.* at 335.  At least one appellate court in New York has applied a contractual choice-of-law clause to a tort claim, finding that the agreement was sufficiently broad because it covered "'all issues' concerning 'enforcement of the rights and duties of the parties.'"  *Cap. Z Fin. Servs. Fund II, L.P. v. Health Net, Inc.*, 840 N.Y.S.2d 16, 23 (1st Dep't 2007); *but see McBeth v. Porges*, 171 F. Supp. 3d 216, 224 n.3 (S.D.N.Y. 2016) (criticizing *Capital Z*'s reliance on a Second Circuit case applying Texas law to determine the scope of a choice of law provision).  The Court finds that the language in Amazon's choice of law provision is sufficiently broad to require application of all disputes between Amazon and Holmes, including those sounding in tort law.

1608881, at *2 (W.D. Wash. Apr. 19, 2010). The Court sees no reason why the same courtesy would not be extended to Holmes, and therefore DENIES Amazon's motion for judgment on the pleadings with respect to claims four and five.

### D. Amazon's Motion for Summary Judgment

For the four claims that have survived Amazon's Rule 12(c) and Rule 68 motions, the Court next considers whether summary judgment is appropriate. In its papers, Amazon argued that all claims were amenable to summary judgment because there is no issue of material fact, asserting that the CheckPoint laptop in Holmes' possession was not the same laptop that Holmes purchased, and received, through Amazon. Amazon Mem. at 22.

As a preliminary matter, the Court finds that it has the discretion under Rule 12(d) to convert Amazon's motion into a motion for summary judgment, because both Amazon and Holmes have had a "reasonable opportunity" to present relevant material to the Court. "The essential inquiry is whether the [non-moving party] should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings." *In re G. & A. Books, Inc.*, 770 F.2d 288, 295 (2d Cir. 1985). Holmes was first put on notice of Amazon's intent to move for summary judgment when Amazon filed its motion on February 12, 2018.[13] Amazon's Notice of Motion specified that as an alternative to judgment on the pleadings, it would seek summary judgment. *See* Doc. 91. Attached to that document was the notice to a pro se litigant who opposes a Rule 12 motion supported by matters outside the pleadings, as required by the Southern District's local rules. *See* S.D.N.Y. Local R. 12.1. That notice informs

---

[13] Even earlier than that, Holmes was put on notice that summary judgment might be implicated in this stage of briefing, as *Apple* informed the Court in its letter requesting a pre-motion conference and at the conference itself, at which Holmes was present, that it would move in the alternative for summary judgment. *See* Doc. 77, Doc. 86 at 8:22–25.

plaintiffs, among other things, that:

> If you do not respond to the motion on time with affidavits or documentary evidence contradicting the facts asserted by the defendant, the court may accept defendant's factual assertions as true. Judgment may then be entered in defendant's favor without a trial.

*Id.*[14]  Further, Amazon's memorandum of law contained citation to numerous facts outside the pleadings that Amazon included in a 56.1 Statement, providing further notice that conversion to summary judgment was a distinct possibility.  *See Sahu v. Union Carbide Corp.*, 548 F.3d 59, 67 (2d Cir. 2008) ("Even where only the party moving to dismiss has submitted extrinsic material such as depositions or affidavits, the opposing party may be deemed to have had adequate notice that the motion to dismiss would be converted.") (quoting *G. & A. Books*, 770 F.2d at 295). Finally, Holmes' own statements indicate that he was aware of what was required of him in opposing a Rule 12 motion that may be converted to a Rule 56 motion.  For example, on March 20, 2018, after Holmes filed his opposition, he wrote to the Court explaining that he located witnesses to provide affidavits that would enhance his opposition.  *See* Doc. 106.[15]  Because the Court finds that Holmes had adequate notice that Amazon's motion may be converted to a motion for summary judgment, it considers Amazon's motion on the merits.

Amazon contends that the laptop it shipped to Holmes was not CheckPoint's laptop, but was a different computer altogether—one that was brand-new and did not contain any third-party tracking software.  Amazon points to the evidence that the CheckPoint laptop was sourced directly from Apple and was packaged for delivery in Breinigsville, Pennsylvania.  *See* Amazon

---

[14] Holmes, however, did not file a 56.1 statement, nor did he file any sworn affidavits, in opposing Amazon's motion.

[15] The Court construed this as a request for an extension of time to amend his opposition, which it granted.  *See* Doc. 107.  Holmes, however, ultimately declined to amend his opposition and did not provide the Court with any extrinsic evidence.  *See* Docs. 108, 116.

56.1 ¶ 2–3.  When CheckPoint received the laptop, an employee attached a sticker with the label "Property of CheckPoint Pumps" and installed Kaseya tracking software.  *Id.* ¶ 4.  The laptop Holmes ordered from Amazon was also sourced directly from Apple and was packaged for delivery in Lewisberry, Pennsylvania.  *Id.* ¶¶ 8–9.  When Holmes received it, the laptop was shrinkwrapped and bore no sticker.  *Id.* ¶¶ 11–12.  When CheckPoint's laptop was ultimately recovered from Scott and delivered back to it, the CheckPoint sticker was still on the underside of the laptop.  *Id.* ¶ 26.  Amazon argues that because there is no genuine dispute that the laptop Amazon delivered was not the laptop belonging to CheckPoint, it cannot as a matter of law be held liable for breach of warranty, negligence, or fraud.  Amazon Mem. at 25.

In opposition, Holmes argues that "the failure to explain specifically what happened creates doubt, precluding the entry of judgment."  Opp. at 5.  He states that he is entitled to "a complete detailed paper trail, so that all parties know the path that the computer, or computers, took" and "depositions of competent employees from the defendants, rather than sketchy two or three page affidavits."  *Id.*[16]  Holmes also suggests that discovery might reveal that Amazon employees negligently or intentionally sent him CheckPoint's computer rather than the computer he ordered.  *Id.* at 7.  These arguments do not raise a genuine issue of material fact.  First, a plaintiff is not entitled to discovery because he does not currently have evidence to show that summary judgment is unwarranted.  To the contrary, "where a plaintiff fails to produce any specific facts whatsoever to support . . . [his] allegation[s], a district court may, in its discretion, refuse to permit discovery and grant summary judgment."  *Contemporary Mission, Inc. v. U.S.*

---

[16] Although Holmes takes issue with the affidavits and declarations provided by Amazon, those are admissible forms of evidence under Rule 56 of the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P 56(c)(1)(A) (providing that a party may support an assertion through citation to "affidavits or declarations"); *id.* 56(c)(4) (providing that affidavits or declarations "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated").  The Court finds that each of Amazon's affidavits and declarations meet the Rule 56 standard, and Holmes makes no specific objection to any affiant or declarant's lack of knowledge.

*Postal Serv.*, 648 F.2d 97, 107 (2d Cir. 1981). Holmes offers no facts to support the contention that the laptop CheckPoint purchased was delivered to him by Amazon, and he does not refute his earlier statements that the laptop he received from Amazon was new, shrink-wrapped, and had no sticker on it. Instead, Holmes' opposition rests on nothing more than speculation, which cannot defeat a motion for summary judgment. *See Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008). The Court therefore GRANTS Amazon's motion for summary judgment for Holmes' second through fifth claims.

## VI.    HOLMES' MOTION TO AMEND

On October 6, 2017, Holmes moved to amend the Complaint. *See* Doc. 47. A court may deny leave to amend a complaint for "good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *Holmes v. Grubman*, 568 F.3d 329, 334 (2d Cir. 2009) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)). A *pro se* complaint should be read liberally, and the Court should grant leave to amend if a "liberal reading" provides "any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank,* 171 F.3d 794, 795 (2d Cir. 1999)). But where the issues with a complaint are "substantive" and cannot be cured by more artful or specific allegations, repleading would be "futile" and a request for further amendment "should be denied." *Id.*

Holmes' proposed amended complaint does not add any factual allegations which would alter the Court's determination that judgment on the pleadings in favor of Apple and summary judgment in favor of Amazon is appropriate. For example, Holmes still fails to allege specific misrepresentations made to him about the laptop he purchased from Amazon. *See* Doc. 47-1 ¶¶ 121–22, 127. Holmes also adds a cause of action against FedEx for acting negligently in its

investigation of CheckPoint's missing laptop computer. *See id.* ¶¶ 135–40. To allege negligence under New York law, "a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 286 (2d Cir. 2006) (quoting *Solomon ex rel. Solomon v. City of New York*, 66 N.Y.2d 1026, 1027 (1985)). Holmes has not even alleged the first element—that FedEx owed him a duty. Further, he has made only conclusory statements, rather than factual allegations, to support his argument that FedEx acted negligently. *E.g.*, Doc. 47-2 ¶ 138. The Court therefore DENIES Holmes' request for leave to amend as futile.

## VII. CONCLUSION

For the reasons stated above, it is ORDERED that:

1. Holmes' motion to amend the Complaint (Doc. 47) is DENIED;

2. CheckPoint's motion to dismiss for lack of personal jurisdiction (Doc. 48) is GRANTED;

3. Holmes' motion for jurisdictional discovery (Doc. 67) is DENIED;

4. Amazon's motion (Doc. 91) is granted in the following respects: (1) judgment will be entered against Amazon in the amount of $2,351 on Claim 1; (2) summary judgment is granted in Amazon's favor on Claims 2, 3, 4, and 5; and (3) judgment on the pleadings is granted in Amazon's favor on Claims 6, 7, and 8.

5. Apple's motion for entry of judgment on the pleadings (Doc. 97) is GRANTED.

The Clerk of Court is respectfully directed to terminate the motions and close the case.

It is SO ORDERED.

Dated:   July 23, 2018
         New York, New York

Edgardo Ramos, U.S.D.J.